UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

DARELTECH, LLC,  :  No. 1:18-cv-08729 (AKH)
   :
      Plaintiff,  :  ECF CASE
   :
   v.  :
   :
XIAOMI INC., BEIJING XIAOMI  :
TECHNOLOGY CO., LTD., XIAOMI  :
USA, INC. and XIAOMI TECHNOLOGY,  :
INC.,  :
   :
      Defendants.  :

-------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISQUALIFY COUNSEL AND
## <u>EXCLUDE EVIDENCE OBTAINED IN VIOLATION OF THE ETHICAL RULES</u>

John J. Normile
JONES DAY
250 Vesey Street
New York, NY  10281-1047
jjnormile@jonesday.com
(212) 326-3939

Ryan B. McCrum (*pro hac vice*)
Susan M. Gerber (*pro hac vice*)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190
rbmccrum@jonesday.com
smgerber@jonesday.com
(216) 586-3939

Dated:  February 5, 2019
   New York, New York

*Attorneys for Defendants*
*Xiaomi Inc., Xiaomi USA, Inc., and Xiaomi*
*Technology, Inc.*

# TABLE OF CONTENTS

**Page**

FACTUAL BACKGROUND.................................................................................... 3

ETHICAL RULES AND LEGAL STANDARDS ................................................. 8

ANALYSIS............................................................................................................ 12

I.  Pierce Bainbridge Committed Several Ethical Violations .............................. 12

    A.  Pierce Bainbridge's Interviews Of Xiaomi Workers Violated Rule 4.2.............. 12

    B.  Pierce Bainbridge's Interviews Also Violated Rules 8.4 And 4.3...................... 15

    C.  Pierce Bainbridge's Conduct Violates Rule 3.4(e) ............................................ 16

II.  Pierce Bainbridge Should Be Disqualified .................................................... 17

III.  Dareltech Should Be Precluded From Using Any Unethically-Obtained Evidence For Any Purpose In This Case ........................................................ 20

CONCLUSION...................................................................................................... 21

DECLARATION OF RYAN McCRUM

    Exhibit A – True and correct copy of an email thread dated November 19, 2018 through January 10, 2019, between Defendant's counsel, Ryan McCrum or Susan Gerber, and Plaintiff's counsel, David Hecht

    Exhibit B – True and correct copy of a letter dated December 17, 2018, from Ryan McCrum to David Hecht

    Exhibit C – True and correct copy of the Declaration of Vincent Yan, executed December 14, 2018

    Exhibit D – True and correct copy of an email thread dated November 19, 2018 through December 22, 2018, between Ryan McCrum or Susan Gerber and David Hecht

    Exhibit E –True and correct copy of a letter dated January 8, 2019, from Ryan McCrum to David Hecht

    Exhibit F – True and correct copy of an email dated January 28, 2019, from David Hecht to Ryan McCrum and John Normile. Defendants' counsel

# TABLE OF AUTHORITIES

**Page**

CASES

*Alexander Interactive, Inc. v. Adorama, Inc.*,
No. 12 Civ. 6608(PKC)(JCF), 2014 WL 2968528 (S.D.N.Y. 2014)......................................15

*Berryman v. Consol. Rail Corp.*,
No. 94-3668, 1995 WL 517642 (E.D. Pa. Aug. 25, 1995) ......................................................14

*Charlap v. Khan*,
972 N.Y.S.2d 871 (2013).............................................................................................................9

*Dixon-Gales v. Brooklyn Hosp. Ctr.*,
941 N.Y.S.2d 468 (2012)...........................................................................................................12

*Hammond v. Junction City*, *Kans.*,
167 F. Supp. 2d 1271 (D. Kan. 2001).............................................................................12, 17, 20

*Meachum v. Outdoor World Corp.*,
654 N.Y.S.2d 240 (1996)..................................................................................................passim

*Miano v. AC & R Advert., Inc.*,
148 F.R.D. 68 (S.D.N.Y. 1993) .................................................................................................15

*Niesig v. Team I*,
76 N.Y.2d 363 (1990) ...............................................................................................................13

*Papanicolaou v. Chase Manhattan Bank, N.A.*,
720 F. Supp. 1080 (S.D.N.Y. 1989)...............................................................................9, 12, 19, 20

*Scott v. Chipotle Mexican Grill, Inc.*,
No. 12-CV-08333 (ALC)(SN), 2014 WL 4852063 (S.D.N.Y. Sept. 29, 2014) .............. passim

*Terra Int'l, Inc. v. Mississippi Chem. Corp.*,
913 F. Supp. 1306 (N.D. Iowa 1996).........................................................................................14

OTHER AUTHORITIES

N.Y. Rules of Professional Conduct, Rule 3.4 ............................................................2, 10, 16, 17

N.Y. Rules of Professional Conduct, Rule 4.2 .................................................................. passim

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

N.Y. Rules of Professional Conduct, Rule 4.3 ..................................................................... passim

N.Y. Rules of Professional Conduct, Rule 8.4 ..................................................................... passim

NYC Eth. Op. 80-95 (June 2, 1982) ........................................................................10, 15

NYC Eth. Op. 328 (Mar. 18, 1974) ........................................................................10, 15

NYC Eth. Op. 2003-02, 2004 WL 837933 (Apr. 2004) .....................................................2, 10, 15

Defendants Xiaomi Inc., Xiaomi USA, Inc., and Xiaomi Technology, Inc. (collectively, "Xiaomi")[1] hereby move to: (1) disqualify counsel for Plaintiff Dareltech, LLC ("Dareltech") from continuing to represent Dareltech in this matter; and (2) preclude Dareltech from using any information that was procured by unethical means for any purpose in this case.

Dareltech's counsel, Pierce Bainbridge Beck Price & Hecht LLP ("Pierce Bainbridge"), committed several ethical violations warranting disqualification and exclusion of unethically obtained information. On December 7 or 8, 2018, Pierce Bainbridge representatives—believed to be Pierce Bainbridge attorneys or employees—attended a Xiaomi event in Manhattan under the guise of disinterested Xiaomi fans. Despite having full knowledge that Xiaomi was represented by Jones Day in this litigation, those individuals proceeded to interview Xiaomi workers in an effort to gain admissions regarding this Court's personal jurisdiction over Xiaomi, which is at issue in this case. At no time did Pierce Bainbridge representatives advise the Xiaomi workers of their affiliation with Pierce Bainbridge or the real purpose of their questioning. Making matters worse, those individuals surreptitiously videotaped the interviews without the consent or knowledge of the interviewees. And, all of this unethical conduct by Pierce Bainbridge came to light only because a Pierce Bainbridge lawyer representing Dareltech in this case (David Hecht) brazenly provided an edited copy of the video—a "highlight reel" as he called it—to counsel for Xiaomi, characterizing the video as containing "Xiaomi admissions," and threatening public disclosure if Xiaomi did not settle this case—constituting still further violations of the ethical rules governing attorneys in New York.

Pierce Bainbridge's conduct warrants disqualification and evidentiary exclusion. Courts and governing ethics bodies in New York have described this type of conduct as "unethical,"

---

[1] Beijing Xiaomi Technology Co., Ltd., is no longer a company, but is rather the former name of Xiaomi Inc.

"deceptive," "unprofessional," "lacking in judgment," "palpably improper," and "smacking of trickery."[2]  The conduct in question violates numerous New York Rules of Professional Conduct ("Rule"), including Rule 4.2 (prohibiting conversations with represented parties), Rule 8.4(c) (prohibiting lawyers from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), Rule 4.3 (requiring lawyers to identify their interests when communicating with individuals when such interests are unclear), and Rule 3.4 (prohibiting lawyers from threatening to present criminal charges to gain an advantage in civil litigation).  Pierce Bainbridge's conduct is just like the misconduct in *Meachum*, 654 N.Y.S.2d at 250, where the plaintiff's entire law firm was disqualified after counsel surreptitiously recorded a conversation with an employee of the defendant in an effort to obtain evidence to support plaintiff's claims.

In fact, Pierce Bainbridge's conduct is worse.  Despite being warned that information was unethically obtained and should be excluded and that threats of presenting unfounded perjury charges to gain an advantage are unethical, Pierce Bainbridge brazenly continues to rely on the unethically-obtained information and continues to threaten exposure of the unsupported perjury allegations.  Most recently, it relied on out-of-context excerpts from the secretly recorded video as the basis for amending the allegations in its complaint and threatened to expose so-called "embarrassing acts" in an effort to urge Xiaomi to settle.  (Dkt. No. 9 at  ¶¶ 9-10; McCrum Decl., Exhibit F.)

After counsel for Xiaomi expressed concerns and asked for an explanation, Pierce Bainbridge—through its counsel of record, David Hecht—dismissed Xiaomi's objections, continued to disregard its ethical obligations, and instead placed blame on Xiaomi for purportedly engaging in "sideshow shenanigans" and "wasteful gamesmanship that courts

---

[2] *See, e.g., Meachum v. Outdoor World Corp.*, 654 N.Y.S.2d 240, 250 (1996); NYC Eth. Op. 2003-02, 2004 WL 837933 (Apr. 2004).

deplore" by objecting to Pierce Bainbridge's conduct.  (McCrum Decl., Exhibit A at 4.)  Courts and governing ethics bodies in New York have repeatedly recognized their duties to supervise members of its bar, and have not hesitated to take appropriate action when warranted.  Here, the action warranted is disqualification of Pierce Bainbridge (*see, e.g., Meachum*, 654 N.Y.S.2d at 375) and exclusion of unethically obtained evidence (*see, e.g., Scott v. Chipotle Mexican Grill, Inc.*, No. 12-CV-08333 (ALC)(SN), 2014 WL 4852063, at *4 (S.D.N.Y. Sept. 29, 2014)*.* [3]

## FACTUAL BACKGROUND

Dareltech, by and through its counsel Pierce Bainbridge (and, specifically, David Hecht), filed its original complaint against Xiaomi, Inc. in this case on September 25, 2018.[4]  (Dkt. No. 3.)  Since November 2018, Pierce Bainbridge has been aware that Xiaomi is represented by counsel.  Specifically, on November 19, 2018, Ryan McCrum of Jones Day, expressly identifying himself as "outside counsel for Xiaomi," emailed Mr. Hecht requesting a call to discuss the case.  (McCrum Decl., Exhibit A at 12.)  Mr. McCrum and Mr. Hecht agreed to have a call later that day, at which time they discussed Dareltech's allegations regarding personal jurisdiction over Xiaomi in this case and Xiaomi's position that personal jurisdiction is lacking.  Mr. McCrum advised that Xiaomi does not sell the products accused of infringement in the

---

[3] In addition to this motion, Xiaomi anticipates filing a motion to dismiss for lack of personal jurisdiction and venue prior to the deadline for its responsive pleading (*i.e.*, April 24, 2019).  Xiaomi brings this motion now as it is ripe for resolution.  In particular, it is clear from Pierce Bainbridge's correspondence and the new allegations in Dareltech's amended complaint that Pierce Bainbridge has no compunction against using unethically obtained information or communicating with represented parties in an effort to obtain unauthorized discovery.  Xiaomi's counsel requested that Pierce Bainbridge cease any further communications with Xiaomi, but has been unable to obtain that assurance.  Given Pierce Bainbridge's continued use of unethically-obtained information and refusal to cease further unethical conduct, Xiaomi is filing this motion in advance of any jurisdictional motion.

[4] Xiaomi is a worldwide leader in the manufacture and sale of hardware (*e.g.,* cellular phones), software and internet services.

3

United States and does not have a presence in New York.  After the call, Mr. Hecht and

Mr. McCrum exchanged several more emails on the issue of personal jurisdiction.  (*Id.* at 10-11.)

The subject line of these emails stated the communications were in regard to "Dareltech v.

Xiaomi."  (*Id.* at 9-12.)

Mr. Hecht first attempted to use the unethically acquired evidence on December 9, 2018,

two days after the Xiaomi fan event, even though Mr. Hecht did not disclose the source of the

information to which he alluded.  Mr. Hecht reiterated ██████████████████████████

███████████████  and added:

> We have learned that not only is there a US subsidiary of Xiaomi,
> Xiaomi USA Inc. (which is registered in California with operations
> in San Diego), but Xiaomi also operates in New York and
> unequivocally has offered and is currently offering the infringing
> products for sale in the United States.

(*Id*. at 8.)  Mr. Hecht did not identify the source of this alleged information or offer any support

for it.  (*Id.*)

After asking for additional information but receiving none, Mr. McCrum sent an eight-

page letter dated December 17, 2018, setting forth detailed facts and law showing that personal

jurisdiction is lacking in this case.  (McCrum Decl., Exhibit B.)  Mr. McCrum included a

declaration executed by Vincent Yan, Director of North America Business at Xiaomi Inc.

(McCrum Decl., Exhibit C.)  Mr. Yan explained that Xiaomi, Inc. does not sell the accused

products in the United States or authorize others to do so.  (McCrum Decl., ¶¶ 12-30.)  In

addition, Mr. Yan explained that Xiaomi does not:  maintain any offices in New York; have any

registered agents, sales agents, or employees located in New York; have a license to do business

in New York; pay taxes in New York; have a listed telephone number with a New York area

code; or own any land in New York.  (*Id.*, ¶¶ 7-11.)

Mr. Hecht first revealed the source of his purported information by email dated December 22, 2018, though he failed to acknowledge Pierce Bainbridge's role in obtaining the information.  (McCrum Decl., Exhibit A at 6.)  Instead, alleging that "[i]t is now clear that your client [Mr. Yan] likely perjured himself when he submitted a declaration with false statements," Mr. Hecht advised Mr. McCrum of a Xiaomi "pop-up event" that was held on December 7, 2018.  (*Id.*)  Mr. Hecht included a link to a heavily-edited video taken at the pop-up event, which he described as "a highlight reel" of "Xiaomi's admissions" regarding Xiaomi's alleged contacts with New York and the United States.[5]  (*Id.*)  It is apparent from the video that the recordings were done without the Xiaomi workers' knowledge that they were being recorded.[6]  (McCrum Decl., ¶¶ 10-11.)  The Xiaomi workers did not know they were being videotaped or that the individuals questioning them were affiliated with Pierce Bainbridge.  (*Id.*, ¶ 12.)

The questions received by the Xiaomi workers were akin to those that would typically be asked during a deposition on the issue of personal jurisdiction.  For instance, the Pierce Bainbridge representatives questioned Xiaomi's workers about the location of Xiaomi's North American Division, whether Xiaomi has a base in New York, whether Xiaomi's Mr. Yan is based in New York, Xiaomi's plans for coming to the United States, whether any Xiaomi products ship from the United States, whether attendees could buy the products on display, whether certain products on display could be purchased on-line, and more.  (*Id.*, ¶ 13.)

Even though nothing had changed since ███████████████████████ ███████████████████ other than Mr. Hecht's unfounded perjury accusation, Mr. Hecht

---

[5] The link was password protected, and Mr. Hecht stated that access was "georestricted to the United States" and he further warned that "views are tracked."  (*Id.*)

[6] "Xiaomi workers" refers to Xiaomi employees and workers from a third party that were hired to help Xiaomi coordinate the event.  Xiaomi employees and third party workers were interviewed.

concluded his December 22, 2019 email ███████████████████████████████████

████████  (McCrum Decl., Exhibit A at 6.)  As Mr. Hecht later confirmed, that increase is based

solely on the alleged perjury charges; in his January 28, 2019 email to Mr. McCrum, Mr. Hecht

encouraged settlement, otherwise "[y]our client [Xiaomi] … risks very embarrassing facts,

which tellingly never have been denied, are exposed to the public."  (McCrum Decl., Exhibit F.)

There is absolutely no basis for Mr. Hecht's perjury assertion, and Xiaomi vehemently

disputes it.  Indeed, Mr. Hecht has yet to identify a single "false" statement from that declaration

despite Xiaomi's repeated requests to do so.  (*See, e.g.,* McCrum Decl., Exhibit A at 2 ("I have

asked you numerous times now to identify the statements in Mr. Yan's affidavit that you claim

are false or inconsistent with other statements.  You have failed to do so.").)

Within an hour of Mr. Hecht's December 22, 2019 email, Mr. McCrum responded.  (*Id.*

at 5.)  Mr. McCrum expressed Xiaomi's grave concerns that Pierce Bainbridge had committed

serious ethical violations by interviewing individuals that it knew were represented parties, by

failing to identify themselves as attorneys for Dareltech, and by secretly recording those

interviews.  (*Id.*)  Mr. McCrum sought Mr. Hecht's explanation, and further requested in that

email and a follow-up email less than half an hour later, that Mr. Hecht identify all individuals

who communicated with workers at the Xiaomi event; advise whether any of those individuals

identified themselves as being affiliated with Dareltech, Pierce Bainbridge, or this dispute;

confirm whether the interviewers informed those with whom they communicated that they were

seeking information relevant to issues in the litigation filed against Xiaomi; and provide a

complete copy of all of the video recorded from the unauthorized interviews of Xiaomi workers.

(*Id.*; *see also* McCrum Decl., Exhibit D at 1.)

Mr. Hecht did not respond to Mr. McCrum's December 22, 2019 emails, and

Mr. McCrum followed-up on January 8, 2019, outlining in great detail the legal and factual bases

for Xiaomi's concerns that Pierce Bainbridge had committed significant ethical violations.

(McCrum Decl., Exhibit E.)  Mr. McCrum also reiterated Xiaomi's request for additional

information, including the information previously requested.  (*Id.*)  Mr. McCrum also asked for

written confirmation that Pierce Bainbridge would cease any further communications with

Xiaomi employees and that all future communications with Xiaomi be through Jones Day.  (*Id.*)

On January 10, 2019, Mr. Hecht finally responded, but he ignored Mr. McCrum's

requests—failing to provide a legitimate explanation for the misconduct, failing to provide any

of the information requested in Mr. McCrum's prior correspondence, and failing to confirm that

Pierce Bainbridge would cease any further communications with Xiaomi.  (McCrum Decl.,

Exhibit A at 3-4.)  Instead, he dismissed Xiaomi's concerns as "sideshow shenanigans about

meritless ethic violations" and "the kind of wasteful gamesmanship that courts deplore."  (*Id.*)

And, in attempting to defend the misconduct vis-à-vis Rule 4.2 (only one of the ethical rules

raised by Xiaomi), Mr. Hecht exacerbated the violations.  Mr. Hecht claimed that Rule 4.2,

which prohibits lawyers from communicating with represented parties, was inapplicable because:

(1) "it was not until … December 14[th]" that Jones Day "indicated that [it] was representing

Xiaomi 'in the matter' of this specific litigation," even though Jones Day had advised since

November 19, 2019 that it was counsel for Xiaomi in this litigation, and even though Mr. Hecht

had proposed offers to Mr. McCrum to settle the litigation (*id.* at 12); (2) the interviews

purportedly involved "low-level employees," even though Mr. Hecht had previously

characterized the statements of these individuals as "Xiaomi admissions" that would bind the

company (*id.* at 6) and continues to rely on these excerpts in pleadings; and (3) the videotaped

communications did not concern this case, even though they were directed to gathering information relating to personal jurisdiction, an issue that was and is central to the litigation, and even though Mr. Hecht specifically relied on the videotaped communications in asserting that there was personal jurisdiction.  (*Id.* at 3.)  Mr. Hecht did not even attempt to address the ethical issues surrounding Rule 8.4 (which has been interpreted to prohibit surreptitiously recording individuals) or Rule 4.3 (requiring lawyers to identify their interests when communicating with individuals).

Mr. McCrum responded that day, noting Mr. Hecht's failure to provide any of the requested information or to refute any of the apparent facts and showing that his limited attempt to justify the misconduct was unavailing.  (*Id.* at 1-3.)

A week later, on January 18, 2019, Dareltech filed an amended complaint.  (Dkt. No. 9.)  Other than some stylistic edits, Dareltech's only changes were to (a) name Xiaomi USA, Inc. and Xiaomi Technology, Inc. as additional Defendants[7], and (b) add information that allegedly supported its position on personal jurisdiction and venue that Pierce Bainbridge unethically obtained and recorded.  (*See* McCrum Decl., ¶¶ 9-10 (alleging "Xiaomi has operated and continues to operate a business located in Manhattan, which its employees have described as a 'secret operation,'" and citing "Xiaomi's Mi fan event in Manhattan on or around December 7-8, 2018").)

## ETHICAL RULES AND LEGAL STANDARDS

At least four of the New York Rules of Professional Conduct are directly implicated by Pierce Bainbridge's conduct here.

---

[7] Notably, even though Mr. Yan's declaration explained that one "party" named in the original complaint, Beijing Xiaomi Technology Co., Ltd. is not a separate company, but is rather the former name of Xiaomi Inc. (McCrum Decl., Exhibit C at ¶ 3), Dareltech did not correct this error when it amended its complaint.

First, under Rule 4.2(a), New York attorneys are prohibited from directly communicating with represented parties:

> In representing a client, a lawyer shall not communicate or cause another to communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the prior consent of the other lawyer or is authorized to do so by law.

Rule 4.2(a)[8]. This rule "guarantees fairness in the adversarial system," "prevents unprincipled attorneys from exploiting the disparity in legal skills between attorney and laypeople," and "prevents a lawyer from circumventing opposing counsel to obtain unwise statements from the adversary party." *Scott*, 2014 WL 4852063, at *4; *see also Papanicolaou v. Chase Manhattan Bank, N.A.*, 720 F. Supp. 1080, 1084 (S.D.N.Y. 1989) (disqualifying law firm for violating Rule 4.2).

Second, under Rule 4.3, New York attorneys are restricted even in communicating with unrepresented parties, and in particular must identify themselves as an attorney before engaging with an unrepresented person about a pending legal matter:

> In communicating on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding.

Third, pursuant to Rule 8.4, New York attorneys are also prohibited from secretly recording communications with others—whether represented by counsel or not—in connection with civil litigation matters because, *inter alia*, doing so violates the prohibition in Rule 8.4(c)

---

[8] Rule 4.2 is essentially the same as its predecessor DR 7-104(a)(2). *Charlap v. Khan*, 972 N.Y.S.2d 871, 875 n.5 (2013) ("The Code was replaced in April of 2009 by the Rules of Professional Responsibility ('Rules'). The Rules and the Code with respect to communicating with unrepresented persons are largely the same, although the Rules expanded some of the responsibilities imposed upon attorneys (*cf.*, DR 7–104[a][2] and Rule 4.3).").

that "[a] lawyer or law firm shall not … (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."  Rule 8.4.  As the New York Committee on Professional Ethics explained:

> Secret recordings are, by definition, surreptitious, they smack of trickery, and they otherwise seem contrary to the expectations of persons engaged in conversations with lawyers.  The persons being recorded might tend to be more cautious or self-protective, or even reluctant to have conversations, if they knew they were being taped.  As a general proposition, we agree that secret recordings by lawyers are inconsistent with the standards of DR-1-102 [now Rule 8.4].  In addition to the considerations listed above, such conduct, in our view, helps undermine those conditions which are essential to a free and open society.

NYC Eth. Op. 80-95 (June 2, 1982) (continuing "to endorse the view that secret recordings of conversations with other <u>lawyers</u> or <u>with clients</u> is improper in <u>any</u> context, criminal or civil" (emphasis in original)); *see also* NYC Eth. Op. 2003-02, 2004 WL 837933, at *1 (Apr. 2004) ("[U]ndisclosed taping smacks of trickery and is improper as a routine practice" and "is ethically impermissible," and noting that "there is considerable potential for societal harm" including "undermining public confidence in the integrity of the legal profession, which in turn undermines the ability of the legal system to function effectively"); NYC Eth. Op. 328 (Mar. 18, 1974) (noting that "[e]ven if the secret electronic recording of a conversation is not illegal it offends the traditional high standards of fairness and candor that should characterize the practice of law and is improper except in special situations").

Fourth, Rule 3.4(e) directs that "[a] lawyer shall not:  present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter."

An appropriate remedy for violating these serious ethical requirements is disqualification. For instance, in *Meachum*, the court found that counsel violated the ethics rules by orchestrating a conversation between one plaintiff and a supervisory employee of the defendant corporation

and furnishing the equipment that allowed plaintiff to surreptitiously record the conversation.

654 N.Y.S.2d at 250.  Finding that counsel knew or should have known that the employee was

represented by counsel, the court determined that counsel violated Rule 4.2's predecessor, DR 7-

104(A)(1).  The court noted that the transcript of the recorded call "evince[d] a carefully planned

strategy to obtain specific information from [the employee] and a concession by her on behalf of

[the defendant], which, plaintiffs admit, was to serve as a basis for the preparation of the

complaint."  *Id.* at 247.  Plaintiffs defended their conduct on the ground that New York law

permits recording of conversations if one party consents, but the court rejected that argument:

"While the tape recording may not have been illegal, nevertheless, the conduct by counsel was

unethical and highly improper."  *Id.* at 249.  The court denied class status, disqualified counsel,

and rebuked counsel for the misconduct:

> [T]he palpably improper and unethical conduct by counsel, in
> surreptitiously tape recording the telephone conversation with
> defendants' supervisory employee, at a time when counsel knew or
> should have known that the corporation was represented by or
> acting through its attorneys (or Legal Department) was improper
> and unethical.  It was deceptive, most unprofessional and
> demonstrates a lack of judgment, sufficient to hold, as a matter of
> law, that counsel is unfit to proceed further in the proper
> representation of the class in this action.

*Id.* at 254.

Similarly, in *Scott*, 2014 WL 4852063 at *3, the court found defendant's counsel violated

Rule 4.2 where the plaintiffs brought a class action under the Fair Labor Standards Act against

Chipotle.  Employees could opt-in to the class. One employee, Gabriel Vasquez, had opted in

and was therefore represented by plaintiffs' counsel.  Chipotle approached Vasquez and obtained

a helpful declaration from him.  The court first found that Chipotle's counsel had violated Rule

4.2(a) because Vasquez was a represented party, and while Chipotle claimed it did not know this,

the Court noted that counsel could have easily discovered Vasquez' status by checking the

11

docket.  As the Court explained, the violation could not be excused "simply because of sloppy

case management" and excluded the evidence that had been unethically obtained.  *Id*. at *3; *see*

*also Papanicolaou*, 720 F. Supp. at 1084 (disqualifying counsel for violation of Rule 4.2);

*Dixon-Gales v. Brooklyn Hosp. Ctr.*, 941 N.Y.S.2d 468, 472 (2012) (precluding counsel from

conducting *ex parte* interview of defendant's employee); *Hammond v. Junction City*, *Kans.*, 167

F. Supp. 2d 1271, 1281-82 (D. Kan. 2001) (finding counsel violated the no-contact rule by

interviewing a represented employee of the opposing party).

<u>ANALYSIS</u>

I.    **Pierce Bainbridge Committed Several Ethical Violations.**

A.    **Pierce Bainbridge's Interviews Of Xiaomi Workers Violated Rule 4.2.**

The facts here show that Pierce Bainbridge or those working at its behest initiated

communications with Xiaomi employees whom Pierce Bainbridge knew to be represented

parties for the carefully planned strategic purpose of attempting to obtain specific information or

concessions to support Dareltech's positions in this dispute.  This conduct is strictly prohibited

by Rule 4.2.  *See, e.g., Meachum*, 654 N.Y.S.2d at 247.

Under Rule 4.2, a lawyer's communication with another party is prohibited if four

elements are met:  (a) the party is represented, (b) the lawyer knows the party is represented by

counsel, (c) the communications relate to the subject of the representation, and (d) the

communication is made by either the lawyer or others acting at his or her request.  All of these

elements are met here.

With respect to the first and second elements, Pierce Bainbridge plainly knew that

Xiaomi was represented at the time of the December 7-8 event.  Pierce Bainbridge had such

knowledge since November 19, 2018, when Mr. McCrum informed Mr. Hecht that "I am outside

counsel for Xiaomi" and referred to Xiaomi as "client."  (McCrum Decl., Exhibit A at 12.)  Mr.

Hecht confirmed his awareness of these facts by engaging in numerous telephone and written communications with Mr. McCrum prior to December 7, 2018, all of which involved the subject matter of this case.  (*Id* at 9-11.)  In its January 10th email, Pierce Bainbridge asserted that "it was not until [Mr. McCrum's] December 14th letter that [Mr. McCrum] indicated that Jones Day was representing Xiaomi 'in the matter' of this specific litigation."  (*Id.* at 3.)  But Pierce Bainbridge cannot "'clos[e] [its] eyes' to the obvious" (*Meachum*, 654 N.Y.S.2d at 249), much less ignore its own acknowledgements that Xiaomi was represented at the time of the December 7-8 event.

Nor can Pierce Bainbridge circumvent this violation by claiming that the Xiaomi workers interviewed at the fan event were not a represented "party" because they were purportedly "low level" employees.  While the term "party" is not defined in Rule 4.2, it has been interpreted to include employees whose "statements may constitute an admission." *Meachum*, 654 N.Y.S.2d at 247; *see also Niesig v. Team I*, 76 N.Y.2d 363, 374 (1990) (interpreting "party" under Rule 4.2 to include "corporate employees whose acts or omissions in the matter under inquiry are … imputed to the corporation for purposes of its liability.")  And an "admission" is precisely how Dareltech seeks to use the purported information its counsel obtained at the fan event. Mr. Hecht's December 22, 2018 email expressly characterized the recorded statements as "Xiaomi's admissions."  (McCrum Decl., Exhibit A at 6.)  Dareltech's amended complaint likewise relies on these purported admissions.  (Dkt. No. 9, ¶¶ 9-10.)  Pierce Bainbridge plainly *intended* to interview employees with sufficient authority to bind Xiaomi, and under the relevant test, such employees cannot be interviewed without counsel's consent.  As *Meachum* explained, if the communication was initiated in order "to gain an admission, which, of necessity, would have come from one with authority to speak for or bind the corporation," a violation of Rule 4.2

has occurred.  654 N.Y.S.2d at 247 (rejecting argument that contacted employee was not a represented party).[9]

The third requirement—that the counsel-to-party communications relate to the pending litigation—is also plainly met.  The issue of personal jurisdiction has been a significant one from the time this case began.  Mr. Hecht himself characterized it as a "key element of Defendants' defense."  (McCrum Decl., Exhibit A at 4.)  Xiaomi has not been able to review the full recordings of Dareltech's unauthorized interviews (despite multiple requests for Dareltech to produce them), but the so-called highlight reel shows that Pierce Bainbridge was seeking information relating to personal jurisdiction.  (McCrum Decl., ¶ 13.)  The interviewers asked where Xiaomi's NA Division was located; where Xiaomi products could be purchased; whether Xiaomi was coming to the United States; whether products ship from the United States; whether Xiaomi has a warehouse in San Jose; and the identities of Xiaomi workers and their home bases. (*Id.*)  These questions were plainly directed toward the issues in this case, particularly personal jurisdiction.

The interviewers who communicated with the Xiaomi workers were either Pierce Bainbridge attorneys or others acting at Pierce Bainbridge's request.  This is plainly the case given Pierce Bainbridge's immediate reliance on the interviews and recording (within a day of the event), the direct relationship between the interviews and this case, and Pierce Bainbridge's refusal to deny any role in the interviews.  Accordingly, the final element of Rule 4.2(a)

---

[9] Notably, the relevant communications involved at least Aaron Yang (Operational and Project Manager) and likely Vincent Yang (Director of North America Business) about whom one interviewer stated "I am going to go say hi."  *See Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 913 F. Supp. 1306, 1321 (N.D. Iowa 1996) (holding that supervisor of shipping department was "managerial level" employee); *Berryman v. Consol. Rail Corp.,* No. 94-3668, 1995 WL 517642, at *2 (E.D. Pa. Aug. 25, 1995) (finding plaintiff's foreman had managerial responsibility).

prohibiting "a lawyer" from communicating or "caus[ing] another to communicate" with a represented party is satisfied.

###### B.   Pierce Bainbridge's Interviews Also Violated Rules 8.4 And 4.3.

Pierce Bainbridge's secret recording of the Xiaomi workers violated additional rules. Several court decisions and New York ethics opinions hold that the secret recording of another, even if technically legal, involves dishonesty, fraud, deceit, or misrepresentation and thus violates Rule 8.4, and under Rule 4.3, this applies regardless of whether the person being secretly taped is represented by counsel.  *See Meachum*, 654 N.Y.S.2d at 247, 254 ("assumed that attorneys would make their identity and interest known to interviewees and comport themselves ethically"); *cf., Miano v. AC & R Advert., Inc.*, 148 F.R.D. 68, 76 (S.D.N.Y. 1993) (noting " authority for the proposition that it is unethical for an attorney to [record conversations without the other party's knowledge], since such conduct is considered to involve deceit or misrepresentation…. Conduct governed by this ethical proscription does not turn on whether the person who is the target of the taping is a party represented in the matter in issue."); *see also Alexander Interactive, Inc. v. Adorama, Inc.*, No. 12 Civ. 6608(PKC)(JCF), 2014 WL 2968528, at *3 (S.D.N.Y. 2014) ("Had Ms. Savage made a tape recording of her conversation with the defendants' expert without disclosing that she was doing so, she would likely have violated Rule 8.4(c) of the New York Rules of Professional Conduct, which prohibits 'conduct involving dishonesty, fraud, deceit or misrepresentation.'"); NYC Eth. Op. 80-95 ("Secret recordings are, by definition, surreptitious, they smack of trickery, and they otherwise seem contrary to the expectations of persons engaged in conversations with lawyers."); NYC Eth. Op. 2003-02, 2004 WL 837933, at *1 ("undisclosed taping smacks of trickery and is improper as a routine practice"); NYC Eth. Op. 328 (noting that "[e]ven if the secret electronic recording of a

conversation is not illegal it offends the traditional high standards of fairness and candor that should characterize the practice of law and is improper except in special situations").

Here, Pierce Bainbridge has not denied that the recordings were secretly made, despite Xiaomi's several requests for information about the circumstances.  Indeed, Xiaomi workers have confirmed they were unaware that these interviews were being recorded.  (McCrum Decl., ¶ 12.)  Accordingly, Pierce Bainbridge's secret recordings violated Rule 8.4(c).  And under Rule 4.3, this violation pertains even if the Xiaomi workers were considered unrepresented.  Pierce Bainbridge has provided no evidence that the Xiaomi workers were ever informed that the interviews were being conducted by or at the behest of adverse counsel about topics at issue in this dispute.

### C.     Pierce Bainbridge's Conduct Violates Rule 3.4(e).

Pierce Bainbridge's use of the secretly recorded interviews has also violated Rule 3.4(e), which directs that "[a] lawyer shall not: present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter."  Pierce Bainbridge violated Rule 3.4(e) by using its unsupported perjury allegations (allegedly supported by an unethically-obtained "highlight reel") to pressure Xiaomi into accepting settlement demands.  In his December 22, 2018 email, Mr. Hecht began by claiming that a Xiaomi employee "likely perjured himself when he submitted a declaration with false statements."  (McCrum Decl., Exhibit A at 6.)  Mr. Hecht did not identify any allegedly false statements.  He proceeded to describe information that was purportedly gathered when Pierce Bainbridge orchestrated the surreptitious video recordings at the December 7 or 8, 2018 event.  (*Id.*)  Mr. Hecht concluded by stating that Dareltech's "original demand has expired."  (*Id.*). ███████████████████████████████ ████████████████████████████████████████████████████████ despite being advised that Xiaomi has not sold a single accused product in the United States.  (*Id.*)  Neither the first

demand nor the increased demand was tethered to any damages model or financial data.  The

only change that had occurred between the initial demand and the higher demand was Pierce

Bainbridge's unsupported claim of perjury.

Mr. Hecht has asserted that the increased settlement demand is justified on the basis that

"the key element of Defendants' defense—i.e., lack of personal jurisdiction—has crumbled."

(*Id.* at 4.)  But that is circular—it continues to use the purported admissions from the fan event as

support.  Moreover, Pierce Bainbridge did not initially increase its demand after the fan event; it

did so only after Xiaomi produced Mr. Yan's declaration in conjunction with Pierce Bainbridge's

allegation that Mr. Yan had committed perjury.

Pierce Bainbridge's attempt to obtain an advantage in this case from its unfounded

perjury charge is further reinforced by Mr. Hecht's subsequent communication in which he

threatened that "[y]our client also risks … very embarrassing facts, which have tellingly never

been denied, are exposed to the public."  (McCrum Decl., Exhibit F.)  Pierce Bainbridge does not

dispute that the so-called "embarrassing facts" refer to the unfounded perjury allegations against

Xiaomi.  Such conduct—threatening to expose criminal charges to obtain an advantage—is

strictly prohibited by Rule 3.4(e).  Mr. Hecht's latest threats are especially troubling given that

they came after Xiaomi's counsel advised Pierce Bainbridge of its concerns relating to Rule

3.4(e).

## II.     Pierce Bainbridge Should Be Disqualified.

Pierce Bainbridge should be disqualified from continuing to represent Dareltech in this

matter.  *See Meachum*, 654 N.YS.2d at 254 (disqualifying counsel for ethical violations);

*Hammond*, 167 F. Supp. 2d at 1290-91 (disqualifying counsel and their law firm for violation of

the no-contact rule).  Indeed, this case is just like the situation in *Meachum* where the court

disqualified counsel and rebuked counsel for the "palpably improper and unethical conduct … in

17

surreptitiously tape recording the telephone conversation with defendant's supervisory employee, at a time when counsel knew or should have known that the corporation was represented by or acting through its attorneys (or Legal Department)."  654 N.YS.2d at 254.  There, the Court labeled such conduct as "deceptive, most unprofessional and demonstrates a lack of judgment." *Id.*  The same is true here.  Pierce Bainbridge (or those under its control) attended the December 7-8 event pretending to be interested fans of Xiaomi.  At the time, Pierce Bainbridge knew that the Xiaomi was represented by Jones Day.  Nonetheless, the Pierce Bainbridge representatives proceeded to interview Xiaomi workers from whom they intended to obtain binding admissions.  They then sent a highly edited link of their misdeeds to counsel for Xiaomi, brazenly proclaiming it contained a host of "Xiaomi admissions."  Such conduct "evinces a carefully planned strategy to obtain specific information from [the Xiaomi workers]" and to use that unethically-obtained information to Dareltech's advantage.  *Id.* at 247.  Just like in *Meachum*, this conduct is palpably improper, unethical, deceptive, unprofessional, lacks proper judgment, and warrants disqualification.

Pierce Bainbridge's unethical conduct alone warrants disqualification.  But disqualification is proper for additional reasons.  Pierce Bainbridge's misconduct has prejudiced, and will continue to prejudice, Xiaomi if Pierce Bainbridge is permitted to continue representing Dareltech.  As evidenced by its amended complaint referencing information obtained unethically, Pierce Bainbridge continues to use the unethically-obtained information to support its position on personal jurisdiction and venue.  Furthermore, Pierce Bainbridge has refused to represent that it will cease any further communications with Xiaomi or its employees.  Pierce Bainbridge is also demanding jurisdictional discovery and will no doubt attempt to further question a Xiaomi representative through deposition about statements that are now being taken

completely out of context and that Pierce Bainbridge should have never obtained.[10]  And this conduct has occurred even after Xiaomi provided notice of the Rules being violated and requested that the conduct cease.  Pierce Bainbridge nonetheless continued to rely on its misconduct.  This misconduct has already imposed additional burdens on Xiaomi, including the lengthy correspondence with Pierce Bainbridge and the filing of this motion, and it will continue to burden Xiaomi in litigating this case and in attempting to engage in any good-faith settlement negotiations.  To avoid further prejudice to Xiaomi, Pierce Bainbridge should be disqualified.

Moreover, under these circumstances, it is not enough to disqualify only Mr. Hecht.  The entire firm of Pierce Bainbridge should be disqualified.  *Papanicolaou*, 720 F. Supp. at 1084 (disqualifying entire law firm when one partner had an unethical conversation with plaintiff, outside the presence of plaintiff's counsel, and the information had permeated the entire firm).  As the court explained in *Papanicolaou*, there is a "presumption of shared knowledge" within a firm, and to avoid disqualification, the firm must show "it implemented effective prophylactic measures to insulate an infected attorney."  *Id.* at 1086.  Under the circumstances of that case, the court found that implementation of a Chinese wall when the information was obtained by a prohibited communication with a represented party would be ineffective because of the nature of the information obtained.  *Id.* at 1087-88.

---

[10] For example, Dareltech claims that one of the event workers—who was not even a Xiaomi employee, but rather an employee of a company hired to help set up the fan event—made reference to a "secret operation."  (McCrum Decl., Exhibit A at 6.)  To the extent this unaffiliated individual made such a reference, Xiaomi has no knowledge about what he was referencing.  To be clear, Xiaomi does not have any "secret operation" in New York.  As Mr. Yan stated under oath, Xiaomi has no offices or place of business in New York.  (McCrum Decl., Exhibit C at ¶ 7.)  Yet, Dareltech has seized on this alleged reference to a "secret operation" and has demonstrated that it will continue to do so despite the unethical manner in which that reference was obtained.

For at least the foregoing reasons, Pierce Bainbridge should be disqualified from continuing to represent Dareltech in this case.

### III.    Dareltech Should Be Precluded From Using Any Unethically-Obtained Evidence For Any Purpose In This Case

A second, independent remedy is warranted:  Dareltech should be precluded from using any of the evidence obtained from the fan event in this case.  This Court has the authority to remedy ethical violations pursuant to its "general supervisory authority over members of the bar" and its obligation to "enforce professional responsibility standards."  *Scott*, 2014 WL 4852063, at *1 (citing *United States v. Hammad*, 858 F.2d 834, 837 (2d Cir. 1988)).  "If a party is found to have violated Rule 4.2, a court may exercise its discretion to exclude the resulting statements from evidence."  *Id.*, at *2 (suppressing declaration obtained as a result of *ex parte* contact with represented party); *see also Hammond*, 167 F. Supp. 2d at 1294 (prohibiting disclosure of information gained from counsel's *ex parte* contacts).

In exercising its discretion, courts should keep in mind "the very real policy concerns that animate Rule 4.2." *Scott*, 2014 WL 4852063, at *4.  As explained in *Papanicolaou,* "Rule 4.2 serves several vital ends.  It guarantees fairness in the adversarial system.  It prevents unprincipled attorneys from exploiting the disparity in legal skills between attorney and laypeople.  It preserves the integrity of the attorney-client relationship."  720 F. Supp. at 1084 (internal citations omitted).  Where, as here, these policy concerns outweigh the probative value of the evidence, it should be excluded.  *Scott*, 2014 WL 4852063, at *4.

In this case, Pierce Bainbridge (or those acting at their behest) entered the fan event wearing hidden recording devices, pretended to be consumers of electronic goods, posed leading questions to the Xiaomi workers (some of whom were third parties hired solely for that event), exploited the disparity in legal skills between lawyers and the interviewees, unfairly attempted to

elicit admissions to disadvantage Xiaomi in this case, and recorded those interviews without the workers' knowledge or consent.  In short, Pierce Bainbridge did everything that Rule 4.2 is designed to prevent.  As the Court recognized in *Scott*, it would be improper and provide undesirable incentives if this Court were to allow Dareltech to benefit from Pierce Bainbridge's inappropriate conduct.  *Id*., at *5.  Any probative value (if any) that might be gleaned from the unethically-obtained interviews is far outweighed by the strong policy against the unscrupulous tactics employed by Pierce Bainbridge in this case.

Accordingly, because the recorded interviews were obtained unethically, the so-called highlight reel as well as all information obtained from any interviews conducted in violation of the Rules, should be excluded for any and all purposes in this case.

## **CONCLUSION**

For all these reasons, Xiaomi respectfully requests that Pierce Bainbridge be disqualified from any further representation in this case and that Dareltech be precluded from using any unethically-obtained information for any purpose in this case.[11]

---

[11] Xiaomi reserves the right to seek additional relief, including seeking attorneys' fees relating to this motion.

Dated:       February 5, 2019                    JONES DAY
             New York, New York


                                                 By: */s/ John J. Normile*
                                                     John J. Normile
                                                     250 Vesey Street
                                                     New York, NY  10281-1047
                                                     jjnormile@jonesday.com
                                                     (212) 326-3939

                                                     Ryan B. McCrum (*pro hac vice*)
                                                     Susan M. Gerber (*pro hac vice*)
                                                     North Point
                                                     901 Lakeside Avenue
                                                     Cleveland, OH  44114-1190
                                                     rbmccrum@jonesday.com
                                                     smgerber@jonesday.com
                                                     (216) 586-3939

                                                     *Attorneys for Defendants*
                                                     *Xiaomi Inc., Xiaomi USA, Inc., and*
                                                     *Xiaomi Technology, Inc.*