UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

DARELTECH, LLC,

                            Plaintiff,

    -against-

XIAOMI INC., BEIJING XIAOMI
TECHNOLOGY CO., LTD., XIAOMI USA, INC.
AND XIAOMI TECHNOLOGY, INC.,

                          Defendants.

------------------------------------------------------------ X

**OPINION AND ORDER
GRANTING DEFENDANTS'
MOTIONS TO DISMISS**

18 Civ. 8729 (AKH)

```
USDC SDNY
DOCUMENT
ELECTRONICALLY  FILED
DOC #:_____
DATE FILED: 7/22/2019
```

ALVIN K. HELLERSTEIN, U.S.D.J.:

      Defendants move to dismiss for lack of personal jurisdiction, improper venue, and

failure to state a claim for relief. I grant the motion for lack of personal jurisdiction.

      Dareltech, LLC ("Dareltech," or "plaintiff") sues Xiaomi Inc., Beijing Xiaomi

Technology, Co., Ltd., Xiaomi USA, Inc., and Xiaomi Technology, Inc. ("defendants"), alleging

that defendants infringed Dareltech's entitlement to U.S. Patent Nos. 9,037,128 ("the '128

patent"); 9,055,144 ("the '144 patent"); 9,503,627 ("the '627 patent"); and 9,571,716 ("the '716

patent") (collectively referred to as "Patents-in-Suit"), concerning a handle for a handheld

terminal (a "selfie-stick"). The First Amended Complaint (ECF 9, hereinafter "FAC") contains

four counts under 35 U.S.C. § 271(a) and (b): infringement of the '128 patent (Count I),

infringement of the '144 patent (Count II), infringement of the '627 patent (Count III), and

infringement of the '716 patent (Count IV).

      Defendants move to dismiss on the grounds of lack of personal jurisdiction,

improper venue, and failure to state a claim upon which relief can be granted. Fed. R. Civ. P.

12(b)(2), (b)(3), (b)(6).  I conclude that personal jurisdiction is lacking, and for the reasons
discussed below, defendants' motion to dismiss is granted.


## Background

### A.     Factual History

1.     The Parties

Plaintiff Dareltech is a Delaware limited liability company, with its principal
place of business in Maryland.  FAC ¶ 2.  Defendant Xiaomi Inc. is a Chinese corporation with
its principal place of business in Beijing, China.  *Id.* ¶¶ 3–4.  Beijing Xiaomi Technology Co.,
Ltd. is a former Chinese corporation that is no longer in existence, and is thus dismissed from the
case.[1]  ECF 26–2 at Ex. C ¶ 3.

Defendants Xiaomi USA, Inc. and Xiaomi Technology, Inc. are California
corporations, with their principal places of business in California.  FAC ¶¶ 5–6.  All of the
Xiaomi Defendants ultimately share the same parent company, Xiaomi Corporation, a Cayman
Islands corporation, which is not a defendant in this case.  ECF 73–3, 170.  Defendant Xiaomi
USA, Inc. is the immediate parent company of Xiaomi Technology, Inc.  *Id.*

2.     Alleged Patent Infringement

On May 19, 2015, June 9, 2015, November 22, 2016, and February 14, 2017,
respectively, the United States Patent and Trademark Office ("PTO") issued the four relevant

---

[1]  Beijing Xiaomi Technology Co., Ltd. is the former name of Xiaomi Inc. and is not a separate
company from Xiaomi Inc.  ECF 26–2, Ex. C ¶ 3.

patents entitled "Handle for Handheld Terminal"[2] based on applications from inventors Jinrong Yang and Ramzi Khalil Maalouf of Dareltech. FAC ¶¶ 11–14. The Patents-in-Suit relate generally to devices and methods for holding and operating a handheld terminal, a "selfie-stick," usable for smartphones and other devices. *Id.* at ¶ 15. The products are "essentially extendable sticks that grip a smartphone and may take photos using Bluetooth technology using a button on the stick." *Id.* at ¶ 20.

Dareltech alleges that the Xiaomi defendants manufacture or sell, or cause to be manufactured and sold, "selfie stick" products infringing the Patents-in-Suit, citing as an example the "Xiaomi Selfie Stick Tripod" (also marketed as "Xiaomi Selfie Stick" and "Xiaomi Selfie Stick Self-Portrait Monopod Extendable Stick"). FAC ¶ 20.

3.    Contact with the Jurisdiction

In its complaint, Dareltech alleges jurisdiction based on the operation of a business located in Manhattan, sales and offers to sell accused products in New York, including at promotional events, sales through Xiaomi's U.S. website, and sales by third-party retailers, among other contacts. *See* FAC ¶¶ 2–3.

i.    *Xiaomi Inc.*

Vincent Yan ("Yan"), Xiaomi Inc.'s director of North American business, testified that the primary business of Xiaomi Inc. is doing "e-commerce in China." Deposition

---

[2] The abstract of the '128 patent states that "[a] handle for a handheld terminal includes a first interface module, a first key module, a first power supply module, and a base handle module. The handle couples with the handheld terminal. The handle makes a wireless connection with the handheld terminal the first interface module or a wired connection with the handheld terminal via the first interface module. The first key module includes one or more user operation command keys. The first power supply module supplies power for the handle. The handle is operable with one hand." FAC Ex. A at 2.

of Vincent Yan ("Yan. Tr."), ECF 58-1, at 285:12–13, 319:24–320: 3, 32:7–12, 184:20–189:2. On a podcast, a journalist named Rebecca Fannin interviewed Donovan Sung, identified as Xiaomi's director of product management, and referred to Xiaomi's "new showroom" in Midtown Manhattan. Hecht Decl. Ex. 4, ECF 67-4. Dareltech did not submit a declaration from Fannin or any other individual with personal knowledge of any Xiaomi showroom or other facility in New York. In the course of jurisdictional discovery, no employee at Xiaomi Inc. has testified that Xiaomi maintains offices or owns property, nor has employees or other agents, in New York or elsewhere in the United States. McCrum Decl., ECF 26-3, ¶ 8; Yan Tr. 304:12–21. There is no proof of any such office. Xiaomi Inc. does not sell any products, including selfie-sticks, in the United States. *Id.* at 319:24–320:4, 32:7–12, 184:20–189:2.

ii.      *Xiaomi USA, Inc.*

Xiaomi USA's business is the research and development of smartphones. Yan Tr. 13:22–14:7. Yan testified that Xiaomi USA, Inc. has no place of business in the state of New York. *Id.* at 138:15–18. Additionally, Yan testified that the company does not own property, has no employees in New York, and does not sell any products, including selfie-sticks, in New York or elsewhere in the world. *Id.* at 304:12–21, 14:9–11, 318:24–319, 10, 184:20–189:2. According to Yan, other than two apartments and an office in San Diego, Xiaomi USA, Inc. does not have any facilities or warehouses. *Id.* at 145:24–146:4.

iii.      *Xiaomi Technology, Inc.*

Xiaomi Technology, Inc. sells Xiaomi-branded products[3] to internet retailers such as Amazon, Newegg, Costco, Walmart, and Fry's for sale in the United States, and has the

---

[3] The products do not include the infringing product. Ex. 3 (Yang Deposition) 156:24.

"exclusive right to handle sales of Xiaomi-branded products in the US." Yan Tr. 32:7–12, 68:20–25, 311:18–312, 5, 127:4–6. Aaron Yang ("Yang"), North America operational program manager at Xiaomi Technology, testified that the company does not have brick-and-mortar retail locations in the United States. Deposition of Aaron Yang ("Yang Tr."), ECF 58-2, at 126:12–14. Xiaomi Technology, Inc. has an office in San Diego, an apartment that it rents for its executive Vincent Yan in San Jose, a warehouse in Los Angeles, and a service provider in Dallas. Yan Tr. 149:24–150:3. According to Yan and Yang, Xiaomi Technology, Inc. employs a handful of full-time employees in the United States, all of whom work on the West Coast. *Id.* at 234:11–18, 304:12–21, 317:16–21; Yang Tr. 225:22–25.

Xiaomi Technology, Inc. hosted three promotional events in New York City. In early 2018, Xiaomi Technology, Inc. contracted with InVizible, a third-party marketing firm, to host an event during Fashion Week in New York; the event involved the Mi Power Bank charging device. Yan Tr. 247:14–248. In the summer of 2018, Xiaomi Technology, Inc. contracted with InVizible to host an event in New York involving Public School fashions, Nike, and the Mi electric scooter. Yan Tr. 247:7–16, 248:11–22.

On December 7–8, 2018, Xiaomi Technology, Inc. contracted with InVizible to host a fan pop-up event titled "Meet Mi in the Box" in New York. Yang Tr. 141:23–142:8. The event, like the previous two, was open to the public. The event featured four floors of Xiaomi products, and engaged "key opinion leaders to attend the event." Yan Tr. 256:5–16; 141:23–143:7. Xiaomi covered the expenses for ten Xiaomi users, nicknamed "Mi fans," to the event from various parts of the United States to serve as special guests. Yan Tr. 171:21–175:2.

At the "Meet Mi in the Box" event, there were Xiaomi products on display, several of which "were not officially available in the U.S.," for New York event-goers to "view,

to use, and to try out for themselves." Yan Tr. 189:6–18. Event-goers also allegedly received "review copies" of products[4] from Xiaomi. Yan Tr. 121:22–122:11. These products included Xiaomi's electric scooter and Mi TV box. 137:8–10.

Xiaomi Technology, Inc. displayed a number of Xiaomi-branded products, including a handheld gimbal for taking pictures.[5] According to Yan, the Chinese name of the gimbal, which he believed "should be" a Xiaomi-branded product, is *yuntai zipaigan* ("platform selfie-stick"). Yan Tr. 266:20–267:19. Based on the presence of the gimbal, Dareltech asserts that "[a]t least one of the products" at the event was an infringing selfie-stick product, which "event-goers saw on display, and even used for themselves." Opp. at 12.

Yang testified that Xiaomi Technology, Inc. "did not incentivize anybody or sell anything at the venue." Yang Tr. 137:12–15; Yan Tr. 265:4–266:4. Xiaomi Technology, Inc. claims that the gimbal device is not sold by any entity in the United States. *Id.*

According to Yang, the device at the event "was actually broken." Yang Tr. 156:24, 157:1–14. ("The thing flopped . . . the gimbal is supposed to . . . put your recording device at the same level at the same time, unless you choose otherwise, using like a[n] operational control. But that thing, it just flopped . . . it didn't work . . . We didn't have any other samples, which is why that one had to be on display"). Yang claimed that "not all products were meant to really be used, but at least [the event-goers] could take a look in the field, but

---

[4] Dareltech does not allege or show that "review copies" (i.e. free samples) of the allegedly infringing product were distributed to event-goers.
[5] Loosely understood and as used here, a gimbal is a device containing pivoted supports, allowing rotation of an object, here, a camera, on multiple axes. Among other uses, a gimbal can stabilize a camera or smartphone, and enables the smooth capture of video while panning or moving.

that's it." *Id.* at 157:23–25. In the deposition, Yang testified that the event-goers could not

"operationally use [the gimbal device] . . . for its intended purposes" of helping one "take selfies

and make sure that the phone or device, recording device, is at a . . . level where any movement

wouldn't affect the image quality." *Id.* at 158:5–14. Yang claimed that some event-goers

wanted to use the product, and some individuals attempted to use it, but "[it] flopped . . . so they

had to put it down right after." *Id.* at 158:25–159:1.

        *iv.*      *Defendants' Online Presence in the United States*

        The complaint alleges that Xiaomi-branded products, including the allegedly

infringing ones, are available for purchase in New York through online retailers such as Amazon.

*See, e.g.*, Hecht Decl. Exs. 7, 8 (displaying screenshots of websites selling products such as

"Xiaomi selfie stick monopods, portable remote wired handheld monopod for Xiaomi, Samsung"

and "original Xiaomi selfie stick Bluetooth remote shutter tripod holder"). According to Yan, no

Xiaomi entity has authorized any other party to offer to sell or sell selfie-stick products on

websites to United States customers. Yan Tr. 309:19–25, 310:1–25, 311:1–23. When asked how

Xiaomi-branded selfie-sticks are available for sale on certain websites to customers based in the

United States, Yan claimed that "either those platform[s] or the sellers on those platforms . . .

purchase those Xiaomi-branded selfie stick[s] in China," and later "sell or re-sell to anyone." *Id.*

at 322:2–6.

        Yan stated that when the Xiaomi Defendants learned of unauthorized sales of

Xiaomi-branded products by unauthorized resellers, the Xiaomi Defendants have reached out to

these sellers, such as Amazon, "proactively," and told them to stop selling those products. Yan

Tr. 214:20–23. Further, Yan also claimed that there have been efforts on Xiaomi's part to find

7

and "weed[] out" unauthorized sellers offering Xiaomi-branded products online in the United States. Yan Tr. 220:1–223:18.

**B.** **Procedural History**

Plaintiff filed its original complaint on September 24, 2018. ECF 1. Plaintiff then filed the First Amended Complaint on January 18, 2019. ECF 9.

On February 5, 2019, defendants filed a motion to disqualify counsel (ECF 24). I denied defendants' motion to disqualify but, having found that Dareltech's counsel acted inconsistently with several New York Rules of Professional Conduct at the December 2018 "Meet Mi in the Box" pop-up event, I disallowed Dareltech from making further use of information obtained there. ECF 48. I subsequently denied Dareltech's motion for reconsideration. On February 8, 2019, I authorized the parties to conduct jurisdictional discovery. On April 29, 2019, Defendants filed this motion. ECF 56.

## Discussion

**C.** **Legal Standards**

1. Personal Jurisdiction

"[P]ersonal jurisdictional issues in patent infringement cases are reviewed under Federal Circuit law, not regional circuit law." *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1293 (Fed. Cir. 2009). "The test for personal jurisdiction in the Federal Circuit mirrors the one employed by the Second Circuit." *Rates Tech. Inc. v. Broadvox Holding Co., LLC*, No. 13-cv-0152 (SAS), 2014 WL 46538, at *1 (S.D.N.Y. Jan. 6, 2014).

"In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Thomas v. Ashcroft*, 470

F.3d 491, 495 (2d Cir. 2006). "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction. At that preliminary stage, the plaintiff's *prima facie* showing may be established solely by allegations. After discovery, the plaintiff's *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant. At that point, the *prima facie* showing must be factually supported." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84–85 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).

Three primary requirements must be satisfied in order for a federal court to exercise personal jurisdiction over an entity: "(1) the entity must have been properly served, (2) the court must have a statutory basis for exercising personal jurisdiction, and (3) the exercise of personal jurisdiction must comport with constitutional due process." *Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 93 (S.D.N.Y. 2015) (citing *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60 (2d Cir. 2012)). The adequacy of service of process is not disputed here.

"Under section 301 of the New York Civil Practice Law and Rules ('CPLR'), a foreign corporation is subject to general jurisdiction if it is 'doing business' in New York," which requires "do[ing] business in New York not occasionally or casually, but with a fair measure of permanence and continuity." *Rates Tech. Inc. v. Broadvox Holding Co., LLC*, 2014 WL 46538, at *2. With respect to specific jurisdiction under the New York long arm statute, "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or

services in the state" . . . so long as plaintiff's "cause of action aris[es] from" that "transaction." N.Y. C.P.L.R. § 302(a)(1); *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d at 60. Section 302(a)(2) of the New York long-arm statute provides jurisdiction when one "commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act."

Under Rule 4(k)(2) of the Federal Rules of Civil Procedure, jurisdiction is proper where "(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws."

Personal jurisdiction, if it exists pursuant to statute, also must be consistent with constitutional due process. "[D]ue process requires only that in order to subject a defendant to a judgment in personam, [the defendant must] have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d at 1296 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "To determine whether a defendant has the necessary 'minimum contacts,' a distinction is made between 'specific' and 'general' personal jurisdiction." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013); *Rates Tech. Inc. v. Broadvox Holding Co., LLC*, 2014 WL 46538, at *1) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). For corporations not incorporated or headquartered in a state, a court may assert general jurisdiction only when its affiliations within the state are so "continuous and systematic" as to render them "essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).

As to specific jurisdiction, courts "evaluate the quality and nature of the defendant's contacts with the forum state under a totality of the circumstances test. Where the claim arises out of, or relates to, the defendant's contacts with the forum—*i.e.*, specific jurisdiction is asserted—minimum contacts necessary to support such jurisdiction exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d at 170 (internal quotations marks and citation omitted). The second stage of the due process inquiry asks whether the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice"—that is, whether it is reasonable under the circumstances of the particular case. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) (citing *International Shoe*, 326 U.S. at 316).

"[T]he Second Circuit [has] noted . . . that it would be 'rare' and 'unusual' for a court to find that an entity's conduct satisfied § 302(a)(1), 'yet, in connection with the same transaction of business,' that the entity did not have sufficient minimum contacts with New York or that the exercise of personal jurisdiction would be otherwise unreasonable." *Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d at 97.

2.      Separation of Identity Among Corporate Entities

To establish that parties are alter egos of each other requires evidence showing that "the owner exercised complete domination over the corporation with respect to the transaction at issue such that the corporation had no separate identity" and that "such domination was used to commit a fraud or a wrong against the plaintiffs that resulted in injury to the plaintiff[]." *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F. 3d 130, 134 (2d Cir. 1997).

11

The corporate veil will be pierced "only in extraordinary circumstances, and conclusory allegations of dominance and control will not be sufficient to defeat a motion to dismiss." *Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P.*, 491 B.R. 335, 347 (Bankr. S.D.N.Y. 2013). Courts must find either fraud or that a defendant "so dominated and disregarded [its alter ego's] corporate form that the alter ego was actually carrying on the controlling party's business instead of its own." *Arctic Ocean Int'l, Ltd. v. High Seas Shipping, Ltd.*, 622 F. Supp. 2d 46, 53 (S.D.N.Y. 2009) (alterations in original) (quoting *Kirno Hill Corp. v. Holt*, 618 F.2d 982, 985 (2d Cir. 1980); *Dolco Invs. Ltd. v. Moonriver Dev., Ltd.*, 486 F. Supp. 2d 261, 271 (S.D.N.Y. 2007)).

Where corporations are merely alter egos of each other, "a court which has jurisdiction over a corporation has jurisdiction over its alter egos." *3M v. Eco Chem, Inc.*, 757 F. 2d 1256, 1265 (Fed. Cir. 1985). Likewise, in patent infringement cases, where venue is proper with respect to one corporation, it is proper with respect to its alter egos as well. *Id.* (citing *Leach Co. v. General Sani-Can Mfg. Co.*, 393 F. 2d 183 (7th Cir. 1968)).

In the Second Circuit, factors determining whether a corporation has a separate identity include, but are not limited to:

> [t]he absence of formalities that are part of corporate existence . . . ; inadequate capitalization; [w]hether funds are put in and taken out of the corporation for personal rather than corporate purposes; [o]verlaps in ownership, officers, directors and personnel; [c]ommon office space, address and telephone numbers; [t]he amount of business discretion displayed by the allegedly dominated corporation; [w]hether the related corporation dealt with its owner or other related corporations at arm's length; [w]hether the corporation was treated as an independent profit center. . . .

*Music Mix Movile LLC v. Newman*, 595 B.R. 292, 302 (Bankr. S.D.N.Y. 2018).

### 3. Failure to State a Claim

In ruling on a motion to dismiss for failure to state a claim, the court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001), *as amended* (Apr. 20, 2001). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### 4. Venue

The patent venue statute provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). "[A] domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute." *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514, 1517 (2017).

To find that a corporation has "a regular and established place of business," a court must find that three general requirements are met: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant" and "not solely a place of the defendant's employee." *In re Clay Inc.*, 871 F. 3d 1355, 1361, 1363 (Fed. Cir. 2017). There is a "long-established rule that suits against aliens are wholly outside the operation of all the federal venue laws, general and special." *Brunette Mach.*

*Works, Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706, 714 (1972); *see also In re HTC Corp.*, 889 F.3d 1349, 1354 (Fed. Cir. 2018).

### D.  Application

1.  Alter Ego Theory

As a threshold issue, I must decide whether the three Xiaomi defendants should be considered collectively, as Dareltech argues, or as distinct entities, in accordance with usual corporate practice. Plaintiff contends that the multiple Xiaomi defendants function as a single entity, emphasizing their mixing of personnel, intermingling of offices, use of the same email domain ("@xiaomi.com"), and decision to pursue legal action as a single entity. *See* Opp. at 6–8. However, these allegations are not sufficient to demonstrate that one of the Xiaomi defendants "exercised complete domination" over the other Xiaomi defendants "with respect to the transaction at issue such that the corporation had no separate identity" and that "such domination was used to commit a fraud or a wrong against the plaintiff[] that resulted in injury to the plaintiff[]." *Am. Fuel Corp.*, 122 F. 3d at 134.

All of the Xiaomi Defendants are subsidiaries of the same parent company, Xiaomi Corporation. Yan Decl. ¶ 13, Ex. AC; Hecht Decl., Ex. 12. Dareltech did not allege which Xiaomi entity was dominant.

Plaintiff's arguments to pierce the corporate veil are insufficient. For example, the court in *Kalin v. Xanboo, Inc.*, 526 F. Supp. 2d 392, 404 (S.D.N.Y. 2007), found that allegations of common address, common ownership, and common principals did not meet the threshold for corporate veil-piercing. In *Allstate Motor Club, Inc. v. SHL Systemhouse, Inc.*, No. 97 C 5354, 1998 WL 575279, at *7 (N.D. Ill. Sept. 3, 1998), the court, observing that members

of a corporate family "commonly consolidate certain functions, such as payroll and legal services, to increase efficiency and reduce cost," concluded that such sharing of resources "does not collapse the separately incorporated entities into one." In *Capmark*, 491 B.R. at 349, the court required further allegations, such as "that funds were commingled, that Goldman Lenders or the PIA Funds were inadequately capitalized, or that any other corporate formalities (such as maintaining separate books and records, or maintaining a functioning board of directors for each subsidiary) were not respected" before allowing a veil piercing claim. These elements are missing from Dareltech's allegations.

Further, the second element of the two-pronged test for corporate veil piercing is not met. Here, despite insinuations of bad acts and efforts to subvert this Court's jurisdiction, Dareltech does not show a wrongful or unjust act arising from any alleged domination. Accordingly, Dareltech's alter ego theory fails.

### i. General Jurisdiction

None of the Xiaomi defendants has continuous or systematic presence in New York sufficient for this Court to exercise general jurisdiction.[6] Xiaomi Inc., a Chinese corporation that does "e-commerce in China," is not "at home" in New York. *See* Yan. Tr. 285:12–13, 319:24–320:3, 32:7–12, 184:20–189:2. Neither are Xiaomi Technology, Inc. and Xiaomi USA, both of which have their principal place of business in California. FAC ¶¶ 5–6. Accordingly, I conclude that there is no general jurisdiction over the defendants.

---

[6] Dareltech, in declining to oppose defendants' position on general jurisdiction, appears to have waived this argument.

15

*ii. Specific Jurisdiction*

In attempting to establish specific jurisdiction, Dareltech presents three categories of contacts: first, Xiaomi's promotional events in New York, at which an allegedly infringing product was displayed; second, the availability of allegedly infringing products on the websites of third-party retailers; and third, Xiaomi's operation of an interactive website to sell non-infringing products in New York. None of these contacts forms a basis for jurisdiction.

First, Dareltech points to three promotional events that Xiaomi Technology, Inc. held in New York. Opp. at 10. Dareltech highlights the physical presence of the Xiaomi-branded gimbal, which I presume to be an infringing product, at the pop-up event. Opp. at 12. These claims do not implicate Xiaomi Inc. (a Chinese corporation) or Xiaomi USA (a California-based smartphone research and development entity), over which this Court has no specific jurisdiction. *See* FAC ¶¶ 3–4; Yan Tr. 13:22–14:7. The only relevant entity involved is Xiaomi Technology, Inc.

Central to the inquiry is whether the presence of a single, dysfunctional gimbal device at a two-day promotional event "Meet Mi in the Box" in New York would constitute using, selling, or offering to sell the allegedly infringing product. Under 35 U.S.C. § 271, "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent . . . infringes the patent" and "whoever actively induces infringement of a patent shall be liable as an infringer."

Xiaomi Technology, Inc. did not sell or offer to sell the allegedly infringing product at the event. As Yang testified, none of the products at the event, including the allegedly infringing product, was for sale, and Xiaomi Technology, Inc. did not "incentivize or push

anybody to buy anything." McCrum Decl. Ex. N, Yang Tr. at 88:3–5. In *Med. Sols., Inc. v. C Change Surgical LLC*, 541 F. 3d 1136, 1140 (Fed. Cir. 2008), the court ruled that "the mere demonstration or display of an accused product, even in an obviously commercial atmosphere," does not constitute an infringement under § 271(a). Here, displaying the gimbal does not by itself meet this requirement for finding patent infringement.

Xiaomi Technology was incorporated in California and has its principal place of business there. FAC ¶¶ 5–6. Its contact with New York is sparse. Hosting three sporadic events in the jurisdiction does not constitute "purposefully avail[ing] itself of the privilege of doing business in the forum and foresee[ing] being haled into court there." *Licci ex rel. Licci, SAL*, 732 F.3d at 170.

Neither did Xiaomi Technology, Inc. "use" the product in a way that would meet the statutory requirement for patent infringement. Xiaomi presented uncontested evidence that the gimbal was broken, and could not serve its intended function. Yang Tr. 156:24; *see* 157:1–14. Even if displayed to members of the public, the defective gimbal, unstable in its position and seemingly unable to hold a mobile phone, could not be used in a way that spoke to "the ultimate function of the product, nor the function for which it was patented." *C.R. Daniels, Inc. v. Naztec Int'l Grp., LLC*, No. CIV.A. ELH-11-01624, 2011 WL 6026293, at *10 (D. Md. Dec. 2, 2011).

Dareltech's citation to *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d at 1298 does not require otherwise. Unlike the *Synthes*, where the defendant had admitted to completing a sale of the allegedly infringing product, here, there is no indication that Xiaomi Technology, Inc.'s display of the gimbal device constituted a part of an "international sales effort."

17

Dareltech's second argument for jurisdiction is based on an argued availability of infringing products on the websites of third-parties, and a claim that "a defendant corporation 'that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State' submits itself to the state's jurisdiction." Opp. at 14–15.

Even if, because there has been no evidentiary hearing, I were to accept plaintiff's contention as true, there is no jurisdiction. *See, e.g.*, *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996); *Rates Tech. Inc. v. Broadvox Holding Co., LLC*, 2014 WL 46538, at *1. The possible availability of potentially infringing products on third party websites outside of Xiaomi's control is insufficient to confer jurisdiction. The mere availability of these products from third parties beyond the control of Xiaomi, coupled with a bare and conclusory invocation of sales through "other Internet sites," FAC ¶ 9, is insufficient to support an inference of jurisdiction, particularly without any further allegation of defendants' knowledge of or intent to use third-party sellers to offer infringing products within this jurisdiction.

Such an inference is even less founded, because defendants have presented affirmative evidence of Xiaomi's efforts to police third party vendors and prevent the sale of unauthorized products in the United States. As Yan testified, the Xiaomi Defendants have proactively asked unauthorized sellers to refrain from selling unauthorized Xiaomi-branded products. *See* Yan Tr. 214:20–23, 220:1–223:18. Although Dareltech criticizes the scope and sufficiency of such efforts, such measures, even if ineffective, do not amount to the "purposeful contact" required. *Cf. Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1561 (Fed. Cir. 1994) (finding jurisdiction where defendant *failed* to contravene allegation of indirect sales to intermediaries that would target the jurisdiction).

18

Third, Plaintiff contends that the defendants' Internet activity is a potential basis for the exercise of personal jurisdiction, because it considers the defendants' website (https://www.mi.com/us) as interactive. Opp. at 22. However, even if the website qualifies as "interactive," the infringing product is not described, offered for sale, or sold on the website. Yang Tr. 156:24. There is no nexus between the allegedly infringing product itself and the defendants' website, and jurisdiction is accordingly lacking. *See Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., S.F. Cty.*, 137 S. Ct. 1773, 1781 (2017).

Similarly, in weighing the fair play and substantial justice factors I conclude that, without sufficient connection to this dispute, New York is not an appropriate forum to resolve this dispute. For the same reasons that this Court has no specific personal jurisdiction over the defendants, there is no personal jurisdiction over the defendants under the New York or federal long-arm statute. As discussed above, defendants neither transacts business or nor committed a tortious act from which this action arises within the state of New York.

Accordingly, there is no specific jurisdiction over the defendants.

2.  Venue

Venue is proper for Xiaomi Inc., a Chinese corporation, because of the "longstanding rule that the venue laws do not protect alien defendants." *See In re HTC Corp.*, 889 F.3d at 1357. Venue is lacking as to Xiaomi USA, Inc. and Xiaomi Technology, Inc., providing a separate and independent basis for dismissing these defendants. First, neither Xiaomi USA, Inc. or Xiaomi Technology, Inc. resides in New York state, not to mention the southern district, more specifically. Second, neither Xiaomi USA, Inc. nor Xiaomi Technology, Inc. has a regular and established place of business in New York. That Xiaomi Technology, Inc. hosted three events in New York over a total span of approximately four days is insufficient to

establish that New York is "a regular and established place of business" for the defendant, because the company's presence in New York is not "stable" or "established" under the *In re Clay* test. Xiaomi USA, Inc. is a research and development company, and does not have any connections to the infringing product in New York. *See* Yan Tr. 13:22–14:7. I conclude venue is not proper over Xiaomi USA, Inc. and Xiaomi Technology, Inc.

### 3. Dareltech's Motion to Transfer

Dareltech argues, in the alternative, that, should personal jurisdiction or venue be lacking, the case should be transferred rather than dismissed. "A motion to transfer venue is not ordinarily granted at the request of the party who chose the forum in the first place." *Hsin Ten Enter. USA, Inc. v. Clark Enterprises*, 138 F. Supp. 2d 449, 465 (S.D.N.Y. 2000) (quoting *Ferrostaal, Inc. v. Union Pac. R.R. Co.*, 109 F. Supp. 2d 146, 152 (S.D.N.Y.2000)). Dareltech, as plaintiff, specifically chose this forum and undertook extensive jurisdictional discovery of defendants' contacts to the forum. No changed circumstances otherwise justify transfer. Accordingly, I hold that transfer of the case is not appropriate.

### 4. Dismissal with Prejudice

Defendants urge that the complaint be dismissed with prejudice, based on the futility of any subsequent complaint, or as a sanction. Dismissal of a complaint pursuant to Fed. R. Civ. P. 12(b)(2) is generally without prejudice. *See, e.g.*, *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 89 (2d Cir. 2018); *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d at 84 n.2. I need not speculate about another court's potential jurisdiction or how it would view the merits. I decline to grant the relief defendants request.

5.    Motions to Strike and Dismiss for Failure to State a Claim

Defendant also moves, pursuant to Fed. R. Civ. P. 12(f) to strike certain

pleadings, based on my order that "Dareltech may not further rely on any information gained at

the Xiaomi promotional event." ECF 48, at 11. In light of my finding that the Court lacks

personal jurisdiction over defendants, defendants' motion to strike is denied as moot. Similarly,

I need not consider defendants' remaining arguments to dismiss the case pursuant to Rule

12(b)(6).

6.    Motion for Attorneys' Fees

To the extent that Dareltech's opposition may be construed as renewal of its

motion for attorneys' fees, Opp. at 33, its motion is denied. "A district court has 'inherent

power' to award attorneys' fees against the offending party and his attorney when it determines a

party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Agee v.*

*Paramount Commc'ns, Inc.*, 114 F.3d 395, 398 (2d Cir. 1997). Dareltech's showing is

insufficient. By its own admission, the dispute, which concerned the sealing of settlement

discussions, was quickly resolved. I hold that such an award is inappropriate here.

## CONCLUSION

For the reasons stated, this Court lacks personal jurisdiction over the defendants. Defendants' motion to dismiss is granted. The Clerk shall terminate the motion (ECF 56) and dismiss the complaint, with costs taxed.

SO ORDERED.

Dated:    July 22, 2019
          New York, New York

_____
ALVIN K. HELLERSTEIN
United States District Judge