**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x

DARELTECH, LLC,                                   :          No. 1:18-cv-08729 (AKH)
                                                  :
              Plaintiff,                          :          ECF CASE
                                                  :
       v.                                         :
                                                  :
XIAOMI INC., BEIJING XIAOMI                       :
TECHNOLOGY CO., LTD., XIAOMI                      :
USA, INC. and XIAOMI TECHNOLOGY,                  :
INC.,                                             :
                                                  :
              Defendants.                         :

---------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO RECOVER ATTORNEY FEES

John J. Normile
JONES DAY
250 Vesey Street
New York, NY  10281-1047
jjnormile@jonesday.com
(212) 326-3939

Ryan B. McCrum (*pro hac vice*)
Susan M. Gerber (*pro hac vice*)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190
rbmccrum@jonesday.com
smgerber@jonesday.com
(216) 586-3939

*Attorneys for Defendants*
*Xiaomi Inc., Xiaomi USA, Inc., and Xiaomi*
*Technology, Inc.*

Dated:    August 6, 2019
          New York, New York

# TABLE OF CONTENTS

**Page**

I.    FACTUAL BACKGROUND ............................................................................ 5

    A.    Dareltech Has Doggedly Pursued Its Meritless Infringement Claims .................. 5

        1.    In November 2018, Xiaomi Inc. Notified Dareltech That Personal Jurisdiction Is Lacking ................................................................... 5

        2.    In December 2018, Dareltech's Counsel Conducted Undisclosed Interviews At The Mi Fan Event ............................................................ 7

        3.    In January 2019, Dareltech Amended Its Complaint And Threatened To Expose Unfounded Perjury Allegations / "Embarrassing Facts." ............................................................................ 8

        4.    In February 2019, Dareltech's Counsel Disparaged Xiaomi's Counsel On Social Media After Court Status Conference And Made Good On Threats To Publicly Expose "Embarrassing Facts." ........ 9

        5.    In March And April 2019, Dareltech's Counsel Bragged To Media About The Unethically-Obtained Interviews And Mischaracterized This Court's Ruling In News And Social Media, And Defendants Again Provided Detailed Bases Showing Lack Of Venue / Jurisdiction ............................................................................. 11

        6.    In April 2019, The Court Excluded The Videos From The Case In A Ruling That Dareltech Repeatedly Mischaracterized ......................... 12

        7.    In April 2019, Dareltech Again Multiplied The Proceedings ................. 14

        8.    In June 2019, This Court Denied Dareltech's Motion For Reconsideration, Affirming Dareltech's Counsel Acted Improperly ...... 15

    B.    This Court Dismisses Dareltech's Claims ........................................................... 15

    C.    Fair Estimate Of Amount Sought ...................................................................... 17

II.    APPLICABLE LEGAL PRINCIPLES ........................................................................ 18

    A.    Section 285 Allows The Court To Award Attorney Fees In Exceptional Cases ................................................................................................................. 18

    B.    The Court May Also Award Attorney Fees Under Section 1927 When Counsel Has Unreasonably And Vexatiously Multiplied The Proceedings ........ 20

    C.    The Court May Exercise Its Inherent Authority And Award Attorney Fees ....... 21

III.    ARGUMENT ............................................................................................................. 21

    A.    This Case Is Exceptional And, As A Prevailing Party, Xiaomi Should Be Awarded Its Attorney Fees Under Section 285 ................................................. 21

        1.    Dareltech's Litigation Position Was Exceptionally Weak ...................... 21

        2.    Dareltech's And Its Counsel's Litigation Conduct Was Egregious ......... 24

# TABLE OF CONTENTS
## (continued)

Page

3.    Dareltech's Exceptionally Weak Litigation Positions And Outrageous Litigation Conduct Warrant An Award of Attorneys' Fees ........................................................................................ 26

4.    The Xiaomi Defendants Are Prevailing Parties ....................................... 29

B.    Dareltech's Counsel Should Be Held Liable For Payment Of Xiaomi's Fees Under Section 1927 Because They Vexatiously And Unreasonably Multiplied These Proceedings ................................................................ 30

C.    In All Events, This Court Has The Power Under Its Inherent Authority To Award Fees To Redress Dareltech's And Its Counsel's Misconduct ................. 31

IV.   CONCLUSION ................................................................................................ 32

DECLARATION OF RYAN McCRUM

Exhibit A - True and correct copy of an excerpt from David Hecht's LinkedIn Profile (Feb. 9, 2019)

Exhibit B - True and correct copy of the May 16, 2019 Complaint filed in *Lewis v. Pierce Bainbridge Beck Price & Hecht LLP et al*, No. 652931/2019 (N.Y. Sup. Ct.)

## TABLE OF AUTHORITIES

Page

CASES

*Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*,
  607 F.3d 817 (Fed. Cir. 2010)............................................................................................20, 21

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
  421 U.S. 240 (1975)......................................................................................................21, 30, 31

*Citi Trends, Inc. v. Coach Inc.*,
  No. RDB-17-1763, 2018 WL 2276151 (D. Md. May 17, 2018) .......................................20, 30

*CRST Van Expedited, Inc. v. E.E.O.C.*,
  136 S. Ct. 1642 (2016)........................................................................................................19, 29

*Direct Fitness Sols., LLC v. Direct Fitness Sols., LLC*,
  281 F. Supp. 3d 697 (N.D. Ill. 2017) ................................................................................19, 30

*Enmon v. Prospect Capital Corp.*,
  675 F.3d 138 (2d Cir. 2012)..............................................................................................21, 31

*Eon-Net LP v. Flagstar Bancorp*,
  653 F.3d 1314 (Fed. Cir. 2011)...............................................................................................28

*In re Cray Inc.*,
  871 F.3d 1355 (Fed. Cir. 2017).................................................................................................8

*Kilopass Tech., Inc. v. Sidense Corp.*,
  738 F.3d 1302 (Fed. Cir. 2013)...............................................................................................28

*Knopf v. Esposito*,
  No. 17cv5833(DLC), 2018 WL 1226023 (S.D.N.Y. Mar. 5, 2018).................................20, 31

*Megna v. Biocomp Labs. Inc.*,
  225 F. Supp. 3d 222 (S.D.N.Y. 2016)...............................................................................19, 30

*Modine Mfg. v. Allen Grp., Inc.*,
  917 F.2d 538 (Fed. Cir. 1990).................................................................................................18

*My Health, Inc. v. ALR Techs., Inc.*,
  No. 2:16-cv-00535-RWS-RSP, 2017 WL 6512221 (E.D. Tex. Dec. 19, 2017).....................26

**TABLE OF AUTHORITIES**
(continued)

Page

*Nat'l Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.,*
    676 F. App'x 967 (Fed. Cir. 2017) .......................................................................27

*Novartis Corp. v. Webvention Holdings LLC,*
    No. CCB-11-3620, 2015 WL 6669158 (D. Md. Oct. 28, 2015)............................27

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.,*
    572 U.S. 545 (2014)........................................................................18, 21, 29, 32

*Raniere v. Microsoft Corp.,*
    887 F.3d 1298 (Fed. Cir. 2018)...........................................................................19

*Rothschild Connected Devices Innovations, LLC v. Guardian Protection Servs.,*
    *Inc.,*
    858 F.3d 1383 (Fed. Cir. 2017)...........................................................................27

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC,*
    137 S. Ct. 1514 (2017) ............................................................................... passim

*Thermolife Int'l LLC v. GNC Corp.,*
    922 F.3d 1347 (Fed. Cir. 2019)...........................................................................18

*Universal Instruments Co. v. Micro Sys. Eng'g, Inc.,*
    No. 3:13-cv-831, 2018 WL 748871 (N.D.N.Y. Feb. 7, 2018)................................17

*Wynder v. McMahon,*
    565 F. App'x 11 (2d Cir. 2014) ..............................................................20, 30, 31

**STATUTES**

28 U.S.C. § 1927.................................................................................................... passim

35 U.S.C. § 285 ..................................................................................................... passim

**OTHER AUTHORITIES**

Fed. R. Civ. P. 54 .....................................................................................................1, 17

Fed. R. Civ. P. 60(a) ............................................................................................. passim

Local Civil Rule 54.1 ...................................................................................................17

N.Y. Rules of Professional Conduct, Rule 3.6 .............................................................31

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

N.Y. Rules of Professional Conduct, Rule 4.2 .............................................................................7, 8

N.Y. Rules of Professional Conduct, Rule 4.3 .............................................................................7, 8

N.Y. Rules of Professional Conduct, Rule 8.4 .............................................................................7, 8

This case is the poster child for why attorney fees are recoverable under 35 U.S.C. § 285 ("Section 285") and 28 U.S.C. § 1927 ("Section 1927").  Whether to grant fees is measured by, among other things, whether the case was not a close one, whether there was misconduct by the parties or counsel *or* whether a party unnecessarily multiplied the proceedings.  While showing any one of these would be sufficient to award fees, all three are present here in spades.  By all accounts, this was a frivolous case exacerbated by litigation misconduct, ethical infractions, and vexatious multiplication of the proceedings.  And it was plainly brought solely to harass and obtain a nuisance settlement.  Now that the Court has dismissed all of Plaintiff Dareltech, Inc.'s ("Dareltech") claims for lack of personal jurisdiction and venue, Xiaomi, Inc., Xiaomi Technology, Inc., and Xiaomi USA, Inc. (collectively, "Xiaomi") move pursuant to Rule 54(d)(2) of the Federal Rules of Civil Procedure to recover the fees they spent defending against this frivolous and unsustainable case, which stands out from others both on the substantive weakness of Dareltech's litigating position and the unreasonable manner in which Dareltech has initiated and prolonged the litigation.

From the outset in November 2018, Xiaomi tried, albeit in vain, to resolve this case by showing that this case could not be sustained and that continuing to maintain it was frivolous.  Indeed, within weeks after Dareltech filed this case, counsel for Xiaomi advised Dareltech's counsel that jurisdiction was plainly lacking.  (Dkt. No. 26-1 at 7-11.)  When Dareltech disregarded this information, counsel for Xiaomi sent a lengthy letter and a sworn declaration outlining in painstaking detail the same law and facts that ultimately led this Court to dismiss Xiaomi, Inc. from this case over seven months later.  (Dkt. Nos. 26-2 & 26-3.)  That letter concluded by advising Dareltech that "[t]his is not a close issue and, therefore, this case should be immediately dismissed.  If it is not, Xiaomi will be seeking all attorneys' fees and costs

associated with having to defend against the frivolous claim that the Southern District of New York has personal jurisdiction over Xiaomi." (Dkt. No. 26-2 at 8.) The months-long conduct that followed involved breaches of ethics, multiplication of these proceedings, public disparagement of Xiaomi and its counsel, unfounded perjury allegations, and a total disregard for the frivolous nature of the case.

To start, Dareltech never substantively responded to Xiaomi's December 17, 2018 letter. Instead, Dareltech's counsel responded by making unfounded perjury allegations, providing a "highlight reel" of alleged "Xiaomi[] admissions," and increasing Dareltech's settlement demand almost three-fold. (Dkt. No. 26-4 at 1-2.) The "highlight reel" included snippets of Dareltech's lead trial counsel and a private investigator conducting undisclosed interrogations. (Dkt. No. 26-1 at 1.) When Xiaomi's counsel pointed out that this conduct contravened the ethics rules, Dareltech's counsel attempted to summarily dispose of it, casting Xiaomi's complaints off as "sideshow shenanigans" and "the kind of wasteful gamesmanship that courts deplore." (*Id*. at 3-4.) But this Court found Dareltech's complaints "to be without merit." (Dkt. No. 48 at 12.) It concluded that "Dareltech acted inconsistently with professional ethics" and excluded the unethically-obtained evidence. (*Id*.) Unrepentant, Dareltech then vexatiously multiplied the proceedings by filing an improper Rule 60(a) motion (to which Xiaomi's counsel spent considerable time drafting a response before it was withdrawn), and then replacing it with an unfounded motion for reconsideration nearly two weeks later, which this Court subsequently denied. (Dkt. Nos. 49 & 53.)

That was not the first time Dareltech unnecessarily multiplied the proceedings. After ignoring Xiaomi's December 17, 2018 letter, and undeterred by the frivolity of its case, Dareltech amended its complaint on January 18, 2019 to add Xiaomi Technology, Inc. and

Xiaomi USA, Inc.  (Dkt. No. 9.)  The new defendants were two California-based companies for which venue in New York was plainly improper under binding Supreme Court and Federal Circuit authority.  The amended complaint relied heavily on information Dareltech obtained from the undisclosed interrogations, despite being on notice that such evidence was unethically procured.  Xiaomi promptly notified Dareltech that "[v]enue does not exist over Xiaomi Technology or Xiaomi USA …[u]nder the Supreme Court's *TC Heartland* case.… It is not even a close call." (Dkt No. 58-3 at 2.)  Dareltech did not seem to care about the merits; it did not even substantively respond to the email.  All they wanted to discuss was the dollars.  Indeed, in an effort to extort Xiaomi, Dareltech's counsel threatened to "expose[] to the public" "very embarrassing facts" if Xiaomi did not capitulate to Dareltech's settlement demands.  (Dkt. No. 26-6.)

When Xiaomi did not give in to these threats, Dareltech and its counsel followed through on them, and doubled-down on their litigation misconduct.  They provided the unethically-obtained videos to the media (Dkt. No. 58-5 at 2) and submitted false allegations to media outlets in China that Vincent Yan, a Xiaomi executive, had committed perjury (Dkt. No. 43 at 3, 13).  In addition, Dareltech's lead lawyer resorted to bad-mouthing and ridiculing Xiaomi and its counsel on LinkedIn (*e.g.*, accusing Xiaomi of "free-riding on others' intellectual property"; calling Xiaomi's lead counsel "pathetic"; claiming Jones Day's "[f]ocus [is] on churning out billable hours rather than strategy"; claiming Jones Day "exposed their own client (and themselves) to ridicule and embarrassment" in this case; likening Dareltech's counsel to "grandmasters in chess" and claiming Jones Day "didn't even look at the chess board.")  (Declaration of Ryan McCrum ("McCrum Decl"), filed herewith at Exhibit A; Dkt. No. 58-4; Dkt. No. 58-10.)

Meanwhile, Xiaomi and its counsel remained focused on disposing of this meritless case as quickly as possible.  Even though Xiaomi's numerous attempts to explain the legal and factual reasons for why this case should have never been brought (*see* Dkt. Nos. 26-1 at 7-11, 26-2 & 58-3 at 2) fell on deaf ears, Xiaomi tried once more to convince Dareltech to dismiss the case before substantial sums were spent taking jurisdictional depositions.  Counsel for Xiaomi sent another lengthy letter, again detailing the reasons why this case should be dismissed for lack of venue and personal jurisdiction on points of law so basic that there can be no excuse for Dareltech's counsel to be unaware of it.  (Dkt. No. 58-6.)  But Dareltech barreled on, insisting on taking expensive jurisdictional discovery.

Upon completion of the discovery, Xiaomi moved to dismiss this case for the same reasons that it had asserted from the beginning of this case.  Dareltech's response to that motion is telling.  In the face of an uncontroverted evidentiary record (which Dareltech's own counsel created by taking jurisdictional depositions of Xiaomi) showing that no Xiaomi Defendant has any presence in New York, Dareltech cobbled together some ambiguous LinkedIn profiles, a third-party interviewer's loose reference to a New York "showroom," and an eleventh-hour and meritless alter-ego theory to try to support the exercise of personal jurisdiction and venue in New York.  (Dkt. No. 66 at 3, 5-8.)  On July 23, 2019, after canceling oral argument on Xiaomi's motion to dismiss as unnecessary, this Court dismissed the case for the same reasons that Xiaomi has asserted to Dareltech all along.  (Dkt. No. 80.)

Any one of these facts would make this case exceptional, but, taken together, the frivolous maintenance of this lawsuit and bad faith and misconduct by Dareltech and its counsel are extraordinary.  Their conduct stands out from others with respect to the substantive weakness of their arguments (Dareltech's position was meritless) and the unreasonable manner in which

this case has been litigated (Dareltech's and its counsel's behavior was reprehensible).  Indeed, the evidence of bad faith abounds as Dareltech unreasonably and vexatiously multiplied these proceedings for one purpose—to try to gain leverage to extract a nuisance settlement from Xiaomi.  This Court has the power and discretion under Sections 285 and 1927, and its inherent authority to grant Xiaomi's request for awarding attorney fees in this case.  Such an award is warranted and would send an effective message to aggressive plaintiffs that this Court will not allow them to file meritless suits with impunity, particularly when their purpose is solely to extract an undeserved payment.

I.      **FACTUAL BACKGROUND**

    A.      **Dareltech Has Doggedly Pursued Its Meritless Infringement Claims.**

        Dareltech, a company incorporated in Delaware with its principal place of business in Maryland, filed its original complaint against Xiaomi Inc. on September 25, 2018 in this District, where the only connection is that Dareltech's counsel is located here.  (Dkt. No. 3.)  Throughout the pendency of this case, Dareltech repeatedly harassed Xiaomi, Inc. and the other Defendants, refused to acknowledge black-letter law and the facts of this case showing the lack of jurisdiction and venue for its case, and made clear its intent to extort a nuisance settlement from Defendants, all of which consistently and unnecessarily multiplied these proceedings.

        1.      **In November 2018, Xiaomi Inc. Notified Dareltech That Personal Jurisdiction Is Lacking.**

        On November 19, 2018, after Dareltech failed to effect service on Xiaomi Inc., counsel for Xiaomi promptly reached out to Dareltech's counsel at Pierce Bainbridge Beck Price & Hecht LLP ("Pierce Bainbridge").  In that initial email, Ryan McCrum of Jones Day, on behalf of Xiaomi," requested a call to discuss the case.  (Dkt. No. 26-1 at 12.)  On that first call, Mr. McCrum explained that personal jurisdiction was lacking.  (*Id.*, 10-11.)  Mr. McCrum further

advised that Xiaomi does not sell the products accused of infringement in the United States and does not have a presence anywhere in the United States, including New York.  (*Id.*)  Following that call, Dareltech's counsel followed up by email, claiming to be "confused" about a lack of jurisdiction, and directing Mr. McCrum to "the U.S. version" of Amazon.com where a number of Xiaomi-branded products were shown.  (*Id.*, 11.)  As Mr. McCrum explained in response, however, the link did not include any of the accused products, and the sale of unaccused products on a third-party website could not, under clear law, confer jurisdiction over Xiaomi Inc.  (*Id.*)  After the parties' counsel exchanged further emails on the issue of personal jurisdiction, Mr. McCrum advised Dareltech's counsel on November 27, 2018 that he would be sending an even more detailed letter regarding the issue, in an attempt to finally resolve the issue.  (*Id.*, 9-10.)  Mr. Hecht gave every impression that Dareltech would dismiss the case once Xiaomi provided the letter and declaration showing the case was frivolous:  "I can assure you that if Xiaomi has not used, offered to sell or sold the infringing product in the U.S., we would not pursue the litigation."  (Dkt. No. 26-1 at 7.)

On December 17, 2018, Mr. McCrum sent the lengthy letter detailing the law and facts compelling dismissal of the case, much of which was the basis for this Court's ultimate decision to dismiss the case for lack of jurisdiction.  (Dkt. No. 26-2.)  Mr. McCrum included a declaration executed by Vincent Yan, an executive employed by the company that contractually owns Xiaomi Inc.  (Dkt. No. 26-3.)  In that letter, Xiaomi also showed that named defendant Beijing Xiaomi Technology Co., Ltd. did not exist.  Xiaomi made that point repeatedly, but Dareltech failed to voluntarily dismiss it from the case.  Indeed, even though Dareltech could have easily corrected the error when it amended its complaint, it did not, which required this Court to rule on the issue.  (Dkt. No. 80 at 2 (dismissing Beijing Xiaomi Technology Co.).)

Dareltech's counsel did not, as he previously said, stop pursuing this litigation.  Indeed, he never substantively responded to Mr. McCrum's letter, though on December 9, 2018, Dareltech did issue a settlement demand.  (Dkt. No. 26-1 at 8.)  As this Court noted, that email promised that the settlement demand would expire on December 14, 2018, and that a higher demand would replace it.  (*Id.; see also* Dkt No. 48 at 4.)

### 2.      In December 2018, Dareltech's Counsel Conducted Undisclosed Interviews At The Mi Fan Event.

Meanwhile, Dareltech's counsel took steps that, as this Court later ruled, were inconsistent with N.Y. Rules of Professional Conduct ("Ethical Rules") 4.2, 4.3, and 8.4.  (Dkt. No. 48  at 7-10.)  In particular, on December 7-8, 2018, during a "Mi Fan Event" held by Xiaomi Technology, Inc. in New York, Mr. Hecht and his agent, private investigator Talia Cohen, recorded numerous conversations on their mobile phones without "disclos[ing] their affiliation with Pierce Bainbridge or their representation of Dareltech in currently pending litigation against Xiaomi."  (Dkt. No. 48 at 2-3.)  The Court found their questions were "reminiscent of that in a deposition."  (*Id.* at 8.)

Thereafter, on December 22, 2018, Dareltech's counsel referenced the event, claiming that "[i]t is now clear that your client [Mr. Yan] likely perjured himself when he submitted a declaration with false statements," purportedly based on the December 7-8, 2018 Mi Fan Event. (Dkt. No. 26-1 at 6.)  Mr. Hecht included a link to the video, which he described as "a highlight reel" of "Xiaomi's admissions" regarding Xiaomi's alleged contacts with New York and the United States.  (*Id*.)  Mr. Hecht made good on his earlier promise to increase Dareltech's settlement demand if Xiaomi did not settle quickly by increasing Dareltech's settlement demand almost three-fold.  (*Id*.)  And, moreover, it became very clear that Mr. Hecht never intended to

dismiss the case, regardless of the facts and law presented in Mr. McCrum's December 17, 2018 letter.

On January 8, 2019, Mr. McCrum sent a detailed letter to Mr. Hecht outlining in great detail the legal and factual bases for Xiaomi's concerns that Dareltech's counsel may have violated several ethical rules.  (Dkt. No. 26-5.)  Dareltech's counsel attempted to dismiss Xiaomi's concerns as "sideshow shenanigans about meritless ethics violations" and "the kind of wasteful gamesmanship that courts deplore."[1]  (Dkt. No. 26-1 at 3-4.)

### 3. In January 2019, Dareltech Amended Its Complaint And Threatened To Expose Unfounded Perjury Allegations / "Embarrassing Facts."

Dareltech and its counsel continued their vexatious conduct.  On January 18, 2019, Dareltech expanded its unfounded lawsuit, amending its complaint to name Xiaomi USA, Inc. and Xiaomi Technology, Inc. as co-defendants and including allegations based upon the unethically-obtained interviews.  (Dkt. No. 9.)  Dareltech knew or should have known from publicly available information (*e.g.*, articles of incorporation), a reasonable investigation, and a Xiaomi Technology employee's unequivocal statement at the Mi-Fan Event that these newly-added Defendants have no place of business in New York (Dkt. No. 58-6 at 2) that they were incorporated in California, were based in California, and did not have any sort of permanent, physical, regular and established place of business in New York (*id.* at 2-4).  As such, venue was plainly improper under binding Supreme Court and Federal Circuit precedent.  *See TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1517 (2017); *In re Cray Inc.*, 871 F.3d 1355, 1361 (Fed. Cir. 2017).

---

[1] In its later ruling addressing the unethically-obtained videos, the Court expressly rejected the assertions that Defendants' complaints were a "sideshow" as being "without merit." (Dkt. No. 48 at 12.)  Indeed, this Court found that Mr. Hecht's behavior was inconsistent with Ethical Rules 4.2, 4.3 and 8.4.  (*Id.*, 7-10.)

Shortly thereafter, on January 28, 2019, Mr. Hecht sent another email that reiterated Dareltech's settlement demands and threatened public disclosure of its baseless perjury allegations if the Xiaomi Defendants refused to pay:  "Your client [Xiaomi] … risks that very embarrassing facts, which have tellingly never been denied, are exposed to the public."  (Dkt. No. 26-6.)

Mr. McCrum responded a week later, again advising Dareltech's counsel that none of the Xiaomi Defendants sold the accused products in the United States, that personal jurisdiction was lacking in this Court, and that venue was improper also as to the newly-added Defendants:

> Our client [Xiaomi, Inc.] does not sell the accused products in the United States and prohibits its distributors from doing so.  Aside from that, this case should have never been brought in this court. Venue does not exist over Xiaomi Technology or Xiaomi USA. Under the Supreme Court's *TC Heartland* case, those companies [Xiaomi Technology and Xiaomi USA] must be incorporated in New York or have a "regular and established place of business" there.  These entities [Xiaomi Technology and Xiaomi USA] have neither.  It is not even a close call.  There is no proper venue over these parties.  Additionally, there is no personal jurisdiction over Xiaomi, Inc.

(Dkt. No. 58-3 at 2.)  Mr. McCrum reiterated the venue and jurisdictional issues during a call that same day.  (*Id.*, 1; Dkt. No. 58, ¶ 7.)  Once again, Dareltech ignored Mr. McCrum's venue and jurisdictional challenges, and never responded to the substance of Mr. McCrum's communications.

### 4.    In February 2019, Dareltech's Counsel Disparaged Xiaomi's Counsel On Social Media After Court Status Conference And Made Good On Threats To Publicly Expose "Embarrassing Facts."

The vexatious conduct of Dareltech and its counsel was not limited to the confines of party communications.  For instance, the day after this Court held a short conference to discuss the status of the case, (*See* 2/8/2019 Minute Entry), Mr. Hecht publicly bragged on LinkedIn that he and his colleague had just gone "toe-to-toe" with lawyers from "one of the largest firms in the

world." (Dkt. No. 58-4.)  Remarkably, he mischaracterized the brief 5-10 minute conference as a

"massacre." (*Id.*)  He also disparaged lead counsel for the Xiaomi Defendants, calling him

"pathetic" and claiming his advocacy was "worse than nearly any law student on a moot court

board." (*Id.*)  Mr. Hecht claimed to be "posting [all of] this as a warning to in-house counsel,"

stating that "[j]ust because you are paying someone $1000/hr+ does not mean you are getting a

pro." (*Id.*)  Claiming to be a "gentleman," Mr. Hecht said he would not "call this person—or his

firm—out by name," although it would only take minutes to connect the dots to figure out the

individual and firm being referenced. (*Id.*)

  In addition, on February 28, 2019, Mr. Hecht (or someone at his or his client's direction)

did exactly what Mr. Hecht had previously threatened to do—the purportedly "very

embarrassing facts" about the Xiaomi Defendants were made public.  On that date, two articles

appeared in the Chinese press that included false and misleading reports that one of the Xiaomi

Defendants' executives had allegedly committed perjury. (Dkt. No. 43 at 3, 13.)  The articles

exaggerated the potential consequences (including criminal prosecution and imprisonment) of

the unfounded perjury allegations and smeared the reputation of the Xiaomi Defendants'

executive. (*Id.*)  These reports cited an "insider" source who did not want to be identified. (*Id.*)

While Pierce Bainbridge denied any involvement, there is no credible explanation other than that

Dareltech or its counsel (or someone else acting on their behalf) was the "insider," as there was

no other plausible way that the purported facts referenced in the articles could have been

obtained.  Dareltech has never denied that at least some of the information in the articles was

known only to the parties and their lawyers. (Dkt. No. 44-1 at 2.)  Nonetheless, Dareltech has

suggested that someone from *Xiaomi* may have been the culprit for leaking this information and

that counsel for Xiaomi failed to conduct a proper investigation. (*Id.* at 1.)  On this record, any

such suggestion is implausible.  Dareltech's counsel had previously threatened to release

"embarrassing facts" if Xiaomi did not settle, and thereafter those very "facts" (along with

gratuitous compliments about Dareltech's counsel) were then published, yet Dareltech would

have this Court believe that Xiaomi may have been responsible for publishing them?  Such a

story strains credulity, to say the least.

> **5.      In March And April 2019, Dareltech's Counsel Bragged To Media
> About The Unethically-Obtained Interviews And Mischaracterized
> This Court's Ruling In News And Social Media, And Defendants
> Again Provided Detailed Bases Showing Lack Of Venue / Jurisdiction.**

Dareltech's disregard for ethical rules continued, even in the face of a pending motion

filed by Defendants on February 5, 2019, to address the improperly obtained videos.  In another

article published on March 15, 2019, Mr. Hecht unabashedly bragged about the "videos he took

in December last year, when he attended [the] Mi Fan [Event], a promotional event for Xiaomi

products in New York, with a hired private investigator."  (Dkt. No. 58-5 at 2.)  Mr. Hecht even

provided copies of the videos to the reporter, and he falsely asserted that Xiaomi is "doing

business and maintaining an office in New York City."  (*Id.*)

Maintaining its focus on the merits, on March 18, 2019, counsel for the Xiaomi

Defendants sent Mr. Hecht yet another letter explaining in detail why this Court lacked venue

and jurisdiction.  (Dkt. No. 58-6.)  Again, Dareltech ignored the substance of this letter, but

responded with angry rhetoric and the false assertion that the March 18, 2019 letter was the "first

time" the Xiaomi Defendants had raised objections about venue.  (Dkt. No. 58-7 at 1.)  Also,

Dareltech demanded venue-specific discovery.  (*Id.*)  Again, the Xiaomi Defendants were forced

to spend time and effort to correct the record (as shown above, the Xiaomi Defendants raised

their objections to venue as early as February 4, 2019), and to respond to Dareltech's inaccurate

and unfounded positions.  (Dkt. No. 58-8.)  Dareltech never substantively responded to the

Xiaomi Defendants' correspondence.

Then, on or about April 1, 2019, again while Defendants' motion to exclude the videos

from evidence was still pending before the Court, Dareltech's improperly obtained videos were

publicized.  Two of the videos appeared on Weibo, the Chinese social media site akin to Twitter,

under the handle "Dareltech IP."  (Dkt. No. 58, ¶ 13.)  The captions under the videos (as

translated from Chinese) claim that "Xiaomi North American Director has committed perjury by

vowing that Xiaomi does not have any subsidiaries in the US, neither has Xiaomi set up any

offices in New York or owns any properties in New York" and that, "according to Dareltech's

investigation, Xiaomi is selling selfie sticks through Amazon, etc. in New York area, and Xiaomi

has office facilities in New York area."  (*Id*., ¶¶ 14-16.)  Incredibly, Dareltech and its counsel

denied any involvement (Dkt. No. 66 at 34), even though the videos had not previously been

made public.  (While Dareltech filed the videos as exhibits to a brief, they cannot be accessed on

this Court's electronic docket.)  It strains credulity to believe that some disinterested third party

engaging in social media under the handle "Dareltech IP," obtained the videos from the Clerk's

Office in New York, and then posted them on Chinese social media.

### 6.      In April 2019, The Court Excluded The Videos From The Case In A Ruling That Dareltech Repeatedly Mischaracterized.

On April 11, 2019, this Court ruled on the Xiaomi Defendants' pending motion, which

sought exclusion of the videos due to Dareltech's recording of the videos by improper means,

and disqualification of Dareltech's counsel based on prejudice to Xiaomi.  Although the Court

determined that disqualification was not warranted at that time, it found that "Dareltech's counsel

acted inconsistently with professional ethics, and that Dareltech is precluded from using the

collected information in further proceedings."  (Dkt. No. 48 at 2.)  As the Court found, "the core

circumstances underlying Xiaomi's allegations of unethical conduct are not in dispute," and Dareltech's arguments were "unpersuasive." (*Id.*, 2, 7.)

Notwithstanding the Court's clear grounds for its ruling, Dareltech filed an improper Rule 60(a) motion. (Dkt. No. 49.) During the April 12, 2019 status conference, this Court questioned Dareltech's counsel about its Rule 60(a) motion, indicating it was not inclined to entertain it and noting that the motion was improperly filed. Here, too, Dareltech unreasonably multiplied the proceedings. It later withdrew the Rule 60(a) motion and replaced it with a motion for reconsideration, but not until nearly two weeks later—after Xiaomi's counsel had spent substantial time drafting a response to the Rule 60(a) motion. Very little of that draft could be used to respond to the replacement motion because Dareltech asserted new arguments, dropped some arguments, and reframed others in its motion for reconsideration.

Inexplicably, after the April 12th status conference, Mr. Hecht stated to a reporter at Law360 that, based on the information in Dareltech's Rule 60(a) motion, this Court "has already directed Dareltech to file a motion for reconsideration," and that "the opinion probably won't stand." (Dkt. No. 58-9 at 1.) Mr. Hecht also falsely claimed that "Xiaomi's disqualification motion was more about Jones Day's fear of litigating against Pierce Bainbridge than it was grounded in any reality" and that "[t]he court saw through the sideshow shenanigans and denied the motion." (*Id.*) In fact, the Court had dismissed Dareltech's mischaracterization of the Xiaomi Defendants' motion as being a "sideshow" and "without merit" and granted the relief requested by the Xiaomi Defendants that Dareltech could not rely on the unethically-obtained evidence. (Dkt. No. 48 at 7-12.)

Moreover, Mr. Hecht endorsed the Law360 article by posting it on his LinkedIn profile with the following commentary:

> We [Pierce Bainbridge] play to win, not to bill.  We don't file
> frivolous motions.  We don't make misrepresentations to courts.
> Instead, we think twenty moves ahead, like grandmasters in chess,
> with the goal of a checkmate.  JONES DAY® fell flat on its face in
> its DQ motion because they didn't even look at the chess board.
> Instead, they exposed their own client (and themselves) to ridicule
> and embarrassment with their motion practice and by creating a
> dispute that opened the door to jurisdictional discovery.  We would
> never let that happen to one of our clients!

(Dkt. No. 58-10.)  Such commentary is shocking given that the Court expressly found that

Xiaomi's motion was not "frivolous" and granted evidentiary relief that Xiaomi sought—exclusion

of the videotapes.  Mr. Hecht's commentary provoked a single response, and the commenter could

not have characterized it better:

> There is really no need to take shots at other law firms.  It makes
> you look childish and unprofessional and quite frankly makes the
> whole profession look bad.  I know you are happy you were not
> disqualified from this case, but schoolyard stuff like this is why no
> one wants to be [a] lawyer.  Grow up.

(*Id.*)

## 7.    In April 2019, Dareltech Again Multiplied The Proceedings.

Still undeterred by the facts and law against its position, on April 12, 2019, Dareltech's

counsel wrote to request a meet and confer to discuss transferring the case and/or adding even

more defendants.  (Dkt. No. 58-11.)  The parties conferred on April 18, 2019, and Mr. McCrum

informed Dareltech's counsel that the Xiaomi Defendants would not agree to transfer or add new

parties given the baseless nature of Dareltech's infringement claims, its unfounded positions on

personal jurisdiction and venue, and the fact that Dareltech forced the Xiaomi Defendants to

litigate unnecessarily in this forum for many months before ever making such a suggestion.

(Dkt. No. 58, ¶¶ 20-23.)  Dareltech's eleventh-hour suggestion underscored the bad faith and

egregiousness of Dareltech's behavior in bringing and pursuing claims in a forum when the

Xiaomi Defendants had been upfront from the beginning and disclosed facts that should have persuaded Dareltech to voluntarily dismiss the case months ago.

> **8.      In June 2019, This Court Denied Dareltech's Motion For Reconsideration, Affirming Dareltech's Counsel Acted Improperly.**

Dareltech still further multiplied these processing by refiling its improper Rule 60(a) motion as a motion for reconsideration.  (Dkt. No. 53.)  On June 3, 2019, this Court denied the motion, finding that none of the bases raised by Dareltech "compel reconsideration."  (Dkt. No. 77 at 2.)

> **B.      This Court Dismisses Dareltech's Claims.**

On April 29, 2019, after the close of Dareltech's jurisdictional discovery, the Xiaomi Defendants promptly moved to dismiss this case for lack of personal jurisdiction, venue, and failure to state a claim.  (Dkt. No. 56.)  They showed, as they had contended all along, that venue was plainly lacking under *TC Heartland* with respect to the two California entities and personal jurisdiction was lacking for all of the Xiaomi Defendants because none of them have sufficient contacts with any relevant forum to justify the exercise of personal jurisdiction.  (Dkt. Nos. 57 & 72.)  Indeed, none of the discovery pursued by Dareltech rectified those problems; to the contrary, the testimony unequivocally confirmed that personal jurisdiction and venue was lacking.  (*Id.*)

Regardless, Dareltech opposed the motion.  (Dkt. No. 66.)  Its response was extraordinarily weak.  Lacking venue, Dareltech tried to cobble together an argument by pointing to a "meeting space" temporarily rented by an unnamed Xiaomi entity in mid-2018 to host a promotional event (not the Mi Fan Event) and a false claim that two Xiaomi Technology, Inc. employees "live in and around Manhattan."  (*Id.*, 26.)  Having no basis for asserting jurisdiction over any of the Xiaomi Defendants, Dareltech asserted a meritless alter-ego theory that conflated

a few irrelevant and/or fabricated contacts with New York and sought to impute them to all three Defendants in order to try to manufacture jurisdiction over them.  (*Id.*, 5-7.)  And, further multiplying the proceedings, Dareltech alternatively asked this Court to transfer the case to California.  (*Id.*, 31-35.)

On July 22, 2019, this Court granted Xiaomi's motion to dismiss in full.  (Dkt. No. 80.)  The Court first dispensed with Dareltech's alter-ego theory, finding its "allegations are not sufficient to demonstrate that one of the Xiaomi defendants 'exercised complete domination' over the other Xiaomi defendants" (*id.*, 13), and that other required "elements are missing from Dareltech's allegations" (*id.*, 15).  This Court concluded that "despite insinuations of bad acts and efforts to subvert this Court's jurisdiction, Dareltech does not show a wrongful or unjust act arising from any alleged domination."  (*Id.*)

Then the Court addressed and rejected the three categories of contacts that Dareltech relied upon—New York promotional events, third party websites selling the allegedly infringing products, and Xiaomi's own interactive website.  *First,* the Court found that the promotional events involved only Xiaomi Technology, Inc. and because no functioning accused product was ever offered for sale or sold at the events, this contact did not meet the requirement for finding infringement and could not be a basis for exercising jurisdiction.  (*Id.*, 16-17.)  *Second*, the Court found that "[t]he possible availability of potentially infringing products on third party websites outside of Xiaomi's control is insufficient to confer jurisdiction."  (*Id.*, 18.)  *Third*, the Court found that "even if the [Xiaomi] website qualifies as 'interactive,' the infringing product is not described, offered for sale, or sold on the website."  (*Id.*, 19.)  As to venue, because the California defendants had no regular and established place of business in New York, the Court found that "venue is not proper over Xiaomi USA, Inc. and Xiaomi Technology, Inc."  (*Id.*, 20.)

Finally, the Court found that Dareltech "specifically chose this forum and undertook extensive jurisdictional discovery of defendants' contacts to the forum.  No changed circumstances otherwise justify transfer."  (*Id.*)  Each of the Court's findings was entirely consistent with the positions in the Xiaomi Defendants' numerous letters to Dareltech.  (*See, e.g.*, Dkt. Nos. 26-2 & 58-6.)

This Court dismissed all of Dareltech's claims without prejudice, with costs taxed against Dareltech.[2]  (Dkt. No. 80 at 20.)  On July 23, 2109, this Court entered final judgment in this case. (Dkt. No. 81.)

## C.    Fair Estimate Of Amount Sought.

Through the end of July, Xiaomi has incurred approximately $735,000 in legal fees to defend this case.  In addition, Xiaomi expects to incur approximately $50,000 in additional fees to brief this motion (assuming Dareltech does not continue to multiply these proceedings).  As required by Federal Rule of Civil Procedure 54(d)(2)(B)(iii), Xiaomi's fair estimate of the amount of fees being sought is $ 785,000.  If the Court grants this motion, Xiaomi requests that it also enter a briefing schedule for the parties to brief the exact amount of fees to be recovered. *Universal Instruments Co. v. Micro Sys. Eng'g, Inc.*, No. 3:13-cv-831 (GLS/DEP), 2018 WL 748871, at *3 (N.D.N.Y. Feb. 7, 2018) ("The exact amount of the award will be determined by subsequent briefing.").

---

[2] Under Local Civil Rule 54.1, the Xiaomi Defendants understand that their notice of taxation of costs and annexed bill of costs must be filed within 30 days after the entry of final judgment.  The Xiaomi Defendants will submit the required notice and bill of costs on or before August 22, 2019.

II.    **APPLICABLE LEGAL PRINCIPLES**

    A.    **Section 285 Allows The Court To Award Attorney Fees In Exceptional Cases.**

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. The Supreme Court explained that under Section 285, "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id*.

To decide whether to award fees in an exceptional case, courts may consider "the closeness of the case, the tactics of counsel, the conduct of the parties, and any other factors that may contribute to a fair allocation of the burdens of litigation as between winner and loser." *Modine Mfg. v. Allen Grp., Inc.*, 917 F.2d 538, 543 (Fed. Cir. 1990). Looking to analogous authority in the copyright arena, the Supreme Court suggested the following factors a district court may consider in deciding whether a case is exceptional: "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id*. (quoting *Fogerty v. Fantasy, Inc*., 510 U.S. 517, 534 n.19 (1994)). Moreover, the plaintiff's failure to conduct a sufficient pre-suit investigation may make a case exceptional. *Thermolife Int'l LLC v. GNC Corp*., 922 F.3d 1347, 1358 (Fed. Cir. 2019) (affirming award of attorney fees when plaintiffs failed to make an adequate pre-suit investigation to show the defendants infringed and engaged in a pattern of misconduct in filing suits to obtain nuisance-value settlements).

Section 285 allows the potential recovery of attorney fees by a "prevailing party."  The Supreme Court recently made clear that "a defendant need not obtain a favorable judgment on the merits in order to be a 'prevailing party.'"  *CRST Van Expedited, Inc. v. E.E.O.C.*, 136 S. Ct. 1642, 1651 (2016).  The Court explained that "[t]he defendant has, however, fulfilled its primary objective whenever the plaintiff's challenge is rebuffed, irrespective of the precise reason for the court's decision.  The defendant may prevail even if the court's final judgment rejects the plaintiff's claim for a nonmerits reason."  *Id*.  The Federal Circuit applies its own law when assessing the award of fees under Section 285, and it has expressly held that *CRST Van Expedited* "applies to our analysis of prevailing-party status under § 285, and that defendants need not prevail on the merits to be classified as a 'prevailing party.'"  *Raniere v. Microsoft Corp*., 887 F.3d 1298, 1306 (Fed. Cir. 2018).

After *CRST Van Expedited*, a defendant who wins a dismissal without prejudice is a prevailing party:

> A dismissal for lack of personal jurisdiction, like a dismissal on mootness or state sovereign immunity grounds, is a procedural determination that closes the court to the nonmoving party, like [plaintiff] here.  In light of *CRST Van Expedited*, the Court is persuaded that [defendants] are "prevailing parties" in this litigation.

*Megna v. Biocomp Labs. Inc*., 225 F. Supp. 3d 222, 224-25 (S.D.N.Y. 2016) (granting attorney fees where plaintiff filed in New York where there was no personal jurisdiction, failed to address the deficiencies and instead moved to transfer case to Colorado, because this conduct unreasonably extended the duration of the litigation).

Other courts have similarly found when claims are dismissed without prejudice, the defendant is nonetheless a prevailing party.  *See, e.g.*, *Direct Fitness Sols., LLC v. Direct Fitness Sols., LLC*, 281 F. Supp. 3d 697, 702 (N.D. Ill. 2017) (finding that defendant dismissed for lack of personal jurisdiction was a prevailing party because it had "achieved the 'enduring victory' of

barring plaintiff from proceeding further on its claims in this venue" and awarding fees for exceptional case under Lanham Act); *Citi Trends, Inc. v. Coach Inc*., No. RDB-17-1763, 2018 WL 2276151, at *5 (D. Md. May 17, 2018) (dismissing case for lack of declaratory judgment jurisdiction and awarding attorney fees for an exceptional case because the events giving rise to the trademark infringement claims occurred in California but the forum-shopping plaintiffs filed a declaratory judgment complaint in Maryland to try to preempt the infringement suit).

### B.   The Court May Also Award Attorney Fees Under Section 1927 When Counsel Has Unreasonably And Vexatiously Multiplied The Proceedings.

"Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.

In order to impose sanctions under Section 1927, "a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith—that is, motivated by improper purposes such as harassment or delay." *Wynder v. McMahon*, 565 F. App'x 11, 13 (2d Cir. 2014) (citation omitted) (affirming district court's award of sanctions when plaintiff moved to reconsider order denying leave to file a fourth amended complaint and "district court made sufficient findings to support a conclusion that the filing of that motion must have been in bad faith.").  This requirement is met when the Court finds "that an 'attorney's actions were so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Knopf v. Esposito*, No. 17cv5833(DLC), 2018 WL 1226023, at *5 (S.D.N.Y. Mar. 5, 2018) (citation omitted) (finding bad faith warranting imposition of attorney fees when party brought a second, related case in new venue in bad faith to add to the burden of ongoing litigation); *see also Advanced Magnetic*

*Closures, Inc. v. Rome Fastener Corp.,* 607 F.3d 817, 834 (Fed. Cir. 2010) ("[I]n the Second Circuit, '28 U.S.C. § 1927 requires subjective bad faith of counsel,' not objective unreasonableness.").

### C.   The Court May Exercise Its Inherent Authority And Award Attorney Fees.

A court also has inherent authority to assess attorneys' fees against a party that "has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons'…. These exceptions are unquestionably assertions of inherent power in the courts to allow attorneys' fees in particular situations, unless forbidden by Congress[.]" *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975). The authority to award attorney's fees pursuant to the Court's inherent powers is very similar to that under Section 1927:

> [T]he only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is … that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both.

*Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 143-44 (2d Cir. 2012).

### III.   <u>ARGUMENT</u>

### A.   This Case Is Exceptional And, As A Prevailing Party, Xiaomi Should Be Awarded Its Attorney Fees Under Section 285.

Under *Octane Fitness*, an exceptional case "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." 572 U.S. at 554. This case is exceptional for both reasons, even though a showing of only one is required.

### 1.   Dareltech's Litigation Position Was Exceptionally Weak.

The substantive strength of Dareltech's litigating position was extremely weak. Venue and personal jurisdiction were lacking, and it was not a close call. Under *TC Heartland*, 137 S.

Ct. at 1516, venue in a patent case is proper *only* when a domestic defendant is (1) incorporated, *or* (2) has a regular and established place of business in the forum state *and* has committed an act of infringement.  Here, for two of the named Defendants, Dareltech miserably flunked both prongs of the test for venue.  It is undisputed that Xiaomi Technology, Inc. and Xiaomi USA, Inc. are incorporated and based in California.  (Dkt. No. 58-6.)  And neither has a regular and established place of business in New York.  There is not a shred of evidence to support a contrary conclusion.  For Xiaomi Inc. (as well as the other Xiaomi defendants), personal jurisdiction was sorely lacking.  Xiaomi Inc., is a Chinese company whose primary business "is doing 'e-commerce in China'"; it has no business presence in the United States.  (Dkt. No. 80 at 3-4.)  It has no contacts with the United States whatsoever, and certainly not minimum contacts required to confer personal jurisdiction.  (*Id.*)  Similarly, Xiaomi Technology, Inc. and Xiaomi USA, Inc. lack minimum contacts with New York.  (*Id.* at 4-5.)  For these reasons and others, the Xiaomi Defendants prevailed across the board on its separate venue and personal jurisdiction challenges.  This Court dismissed all of the Xiaomi Defendants for lack of personal jurisdiction, and two Xiaomi Defendants for lack of venue.  (*Id.* at 16-20.)

The law and facts demonstrating the lack of jurisdiction and venue should have been clear to Dareltech prior to filing this case.  But to be sure it was clear, Xiaomi repeatedly advised Dareltech that dismissal for lack of jurisdiction and venue was the inevitable result if Dareltech continued to maintain its frivolous case.  At least four separate times, counsel for Xiaomi informed Dareltech of the lack of jurisdiction and venue, often providing lengthy, multi-page explanations in order to meaningfully confer and conserve judicial and party resources.  After the initial email exchanges beginning in mid-November (Dkt. No. 26-1 at 7-11), Xiaomi's counsel sent a detailed letter and a sworn declaration spelling out in black and white all the reasons why

this case could not be sustained in this forum against Xiaomi, Inc., the only named defendant at that time.  (Dkt. Nos. 26-2 & 26-3.)  Dareltech ignored the law and facts compelling dismissal and instead chose to multiply the proceedings by adding new parties for whom venue and jurisdiction was plainly lacking.  Xiaomi then immediately informed Dareltech that venue was improper in New York for the new defendants, and it reiterated its position that personal jurisdiction over all Xiaomi, Inc. was lacking.  (Dkt. No. 58-3 at 2 ("It is not even a close call.").)  Xiaomi followed up this email with a lengthy letter, fully detailing the law compelling dismissal and urging Dareltech "to dismiss this case promptly or risk paying Xiaomi back for all of the costs and expenses it has incurred and will have to incur to obtain a judicial ruling that jurisdiction and venue is lacking here."  (Dkt. No. 58-6 at 5.)  Dareltech never provided a single substantive response to any of these communications.  Instead, it was focused on extracting money from Xiaomi, urging Xiaomi to pay significant sums of money on at least four separate occasions.  (Dkt. No. 26-1 at 6, 8-9; Dkt. No. 26-6; Dkt. No. 58-8.)

Dareltech also forced Xiaomi to endure days of jurisdictional depositions knowing it was not going to find any facts supporting its positions.  Indeed, Dareltech's opposition to Xiaomi's motion to dismiss barely used the testimony it elicited from the witnesses to support its jurisdictional and venue positions.  Instead, Dareltech introduced even more errors and unfounded allegations.  It concocted a tortured alter-ego theory that had no support in fact or law.  This Court found that Dareltech's allegations were "not sufficient" to establish that the Xiaomi Defendants were alter egos of each other.  (Dkt. No. 80 at 14.)  The Court concluded Dareltech's "insinuations of bad acts and efforts to subvert this Court's jurisdiction" did not "show a wrongful or unjust act arising from any alleged domination" and thus, Dareltech's alter ego theory failed.  (*Id.* at 15.)

Dareltech then asserted alleged "facts" from LinkedIn and the internet to support its position.  This Court rejected Dareltech's unsupported assertions:

> Dareltech did not submit a declaration from Fannin or any other individual with personal knowledge of any Xiaomi showroom or other facility in New York.  In the course of jurisdictional discovery, no employee at Xiaomi Inc. has testified that Xiaomi maintains offices or owns property, nor has employees or other agents, in New York or elsewhere in the United States.  There is no proof of any such office.

(Dkt. No. 80 at 4 (internal citations omitted).)

In short, had Dareltech done the reasonable and sensible thing by either performing an adequate pre-suit investigation and never filing this case or voluntarily dismissing it early when Xiaomi first showed that jurisdiction was plainly lacking, Xiaomi would have been saved the unnecessary time and expense of litigating this case for 10 months.  Instead, Dareltech pressed forward with its frivolous claims for most of a year.  During that time, Xiaomi was forced to brief multiple motions; engage in numerous letter campaigns; endure many hours of extensive depositions and even more hours preparing for them; prepare for, travel to, and attend three conferences (the last one being canceled on the eve of the argument); and endure repeated attacks on the reputations of its executives and counsel.  It is preposterous that the Xiaomi Defendants—companies who had no business whatsoever being sued in NY—were dragged through months of this unnecessary litigation and related expense to prove what it said all along: this case should have never been filed in this forum.  Dareltech's conduct should not be without consequence.  This Court should allow Xiaomi to recover the fees it spent defending itself in this frivolous lawsuit.

## 2.    Dareltech's And Its Counsel's Litigation Conduct Was Egregious.

Not only was Dareltech's litigation position incredibly weak, but the manner in which this case was litigated, both before this Court and otherwise, was reprehensible.  The evidence of

Dareltech's and it's counsel's bad faith litigation conduct abounds.  At every turn, Dareltech and

its counsel unreasonably multiplied these proceedings:

- **Dareltech had no evidence to support the exercise of jurisdiction over Xiaomi, Inc. when it filed this case.**  It brought this case on a hope and a prayer that it might discover some facts to establish jurisdiction.  When Xiaomi, Inc. showed it was not subject to jurisdiction here and no facts could be found to alter that outcome, Dareltech still pressed forward, amending its complaint to add two new defendants from California even though venue was plainly lacking under the Supreme Court's bright line test in *TC Heartland*.

- **Dareltech insisted on taking expensive and time consuming jurisdictional discovery to try find some facts to support its case.**  Not only did it find no such facts, but it accomplished just the opposite.  It created a record that clearly showed that none of the Xiaomi Defendants were subject to jurisdiction in New York and that venue was not proper here.  Faced with that record, Dareltech then threatened to add *even more* defendants.  (Dkt. No. 58-11.)

- **Dareltech failed to dismiss Beijing Xiaomi Technology Co., Ltd. when it learned the company did not exist.**  Even though Dareltech could have easily corrected the error when it amended its complaint, it did not, which required this Court to rule on the issue.  (Dkt. No. 80 at 2 (dismissing Beijing Xiaomi Technology Co.).)

- **Dareltech sought reconsideration of the Court's order excluding the improperly obtained videos.**  Not only was there no basis for the motion, Dareltech first brought an improper Rule 60(b) motion (Dkt. No. 49), and only after nearly two weeks (during which time Xiaomi had substantially drafted a response), it then withdrew the motion in favor of an unfounded reconsideration motion (Dkt. No. 53) that asserted new and different theories, necessitating a wholesale rewrite of Xiaomi's previous draft response.  This Court denied the motion:  "Dareletch presents several basis for its motion, none of which compel reconsideration."  (Dkt. No. 77 at 2.).

- **Dareltech repeatedly sought sanctions against Xiaomi.**  (*See, e.g.*, Dkt. No. 32 at 3; Dkt. No. 39 at 10; Dkt. No. 66 at 33 n.5.)  This Court found each of Dareltech's requests to be without merit (Dkt No. 35; Dkt. No. 48 at 12; Dkt. No. 80 at 21), but Xiaomi was put to the task of responding to each of Dareltech's frivolous and meritless requests.

Dareltech's and its counsel's conduct outside the courtroom was also outrageous:

- **Dareltech's counsel acted inconsistently with professional ethics.**  (Dkt. Nos. 48 & 77.)  Dareltech's counsel has never shown an ounce of contrition about this misconduct.  To the contrary, Mr. Hecht bragged about conducting the

undisclosed interviews to the media (Dkt. No. 58-5), and stated to Law360 that this Court's original decision "probably won't stand" (Dkt. No. 58-9).

- **Dareltech threatened to expose so-called "embarrassing facts".** (Dkt. No. 26-6.) When Xiaomi did not give in to these threats, Dareltech and its counsel followed through, providing copies of the unethically-obtained videos to the media in China and elsewhere (Dkt. No. 58 at ¶¶ 13-16; Dkt. No. 58-5) and apparently leaking insider information about the case in order to cause Mr. Yan public embarrassment (Dkt. Nos. 44-1, 44-2 & 44-3).[3]

- **Dareltech's counsel harassed Xiaomi's counsel.** As detailed above, Mr. Hecht engaged in *ad hominem* attacks on social media and in interviews. (*See, e.g.,* Dkt. Nos. 58-4, 58-10 & 58-9.)

### 3. Dareltech's Exceptionally Weak Litigation Positions And Outrageous Litigation Conduct Warrant An Award of Attorneys' Fees.

Dareltech's conduct is worse than that found in other cases where courts have awarded attorney fees under Section 285. For example, in *My Health, Inc. v. ALR Techs., Inc*., No. 2:16-cv-00535-RWS-RSP, 2017 WL 6512221, at *4-5 (E.D. Tex. Dec. 19, 2017), the district court awarded attorney fees after case was dismissed. The court found that the plaintiff's legal position was weak, its litigation campaign was extensive, and that the plaintiff had engaged in unethical conduct by contacting represented parties directly in violation of the ethical rules. *Id.* Here, Dareltech's legal position on jurisdiction and venue was exceptionally weak, its campaign to harass Xiaomi and Xiaomi's counsel was extensive, and its counsel acted inconsistently with professional ethics. Even though Xiaomi established early on that jurisdiction and venue were lacking here, Dareltech ignored Xiaomi's communications, and pressed forward with its meritless theories based upon unsupported insinuations.

Moreover, whatever pre-suit investigation Dareltech may have done was plainly inadequate. It had no factual basis for alleging personal jurisdiction and venue when the case

---

[3] Dareltech's counsel's website suggests that harassing and bullying their opponents is a matter of course. The firm's home page depicts combat scenes and calls the firm "a high stakes litigation force" and "dedicated to the lost art of combat by trial." https://piercebainbridge.com/.

was filed.  *Rothschild Connected Devices Innovations, LLC v. Guardian Protection Servs., Inc.,* 858 F.3d 1383, 1389-90 (Fed. Cir. 2017) (reversing district court's finding that the case was not exceptional because plaintiff's pre-suit investigation was inadequate and litigation was vexatious because plaintiff brought suit solely to extract nuisance payment); *see also Nat'l Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc*., 676 F. App'x 967, 972-73 (Fed. Cir. 2017) (affirming award of attorney fees when plaintiff's explanations were inconsistent and legal arguments were extremely weak).  And even if Dareltech's filing of this baseless suit could be somehow justified—and it cannot—there can be no justification for Dareltech's continued pursuit of the case after Xiaomi provided sworn evidence and applicable law that established the lack of jurisdiction and improper venue.  *Rothschild*, 858 F.3d 1389-90 (finding plaintiff failed to have a good faith basis for its claims, particularly in light of the prior art provided by defendant, that plaintiff and its counsel apparently never analyzed).

Dareltech and its counsel brought this case solely for the purpose of shaking down Xiaomi in the hopes of getting a quick settlement.  Indeed, this record is replete with examples of Xiaomi's pleading with Dareltech to dismiss its frivolous claims in the face of clear law and facts compelling dismissal.  Rather than substantively respond, Dareltech made settlement overtures, at least one of which threatened to publicly expose "embarrassing facts" if not considered.  (Dkt. No. 26-6.)  Courts are especially suspicious where, like here, a plaintiff's settlement demand is not related to the merits of the case but rather increase as time passes to encourage quick settlements.  *See, e.g., Novartis Corp. v. Webvention Holdings LLC,* No. CCB-11-3620, 2015 WL 6669158, at *3 (D. Md. Oct. 28, 2015) (finding an exceptional case where plaintiff demanded settlements that "apparently were not altered to reflect the extent to which a company

allegedly was infringing, but were based on how quickly the company accepted the licensing offer and thus induced quick settlements").

When Xiaomi did not immediately capitulate, Dareltech and its counsel turned up the heat by wielding baseless accusations, increasing the amount demanded, threatening embarrassment, and then using the media to perpetuate the baseless accusations.  The Federal Circuit has repeatedly affirmed awards of attorney fees to discourage this type of misuse of the judicial system:

> [I]t is not improper for a patentee to vigorously enforce its patent rights or offer standard licensing terms, … [b]ut the appetite for licensing revenue cannot overpower a litigant's and its counsel's obligation to file cases reasonably based in law and fact and to litigate those cases in good faith.… Eon-Net filed an objectively baseless infringement action against Flagstar and brought that action in bad faith, specifically to extract a nuisance value settlement by exploiting the high cost imposed on Flagstar to defend against Eon-Net's baseless claims.

*Eon-Net LP v. Flagstar Bancorp,* 653 F.3d 1314, 1328 (Fed. Cir. 2011) (affirming award of attorney fees).

"[T]he aim of § 285 is to compensate a defendant for attorneys' fees it should not have been forced to incur."  *Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1313 (Fed. Cir. 2013).  Here, Xiaomi was forced to spend approximately three-quarters of a million dollars to obtain the relief that Xiaomi asserted from the very beginning.  Dareltech's extortionist approach has been condemned by the Federal Circuit, and Xiaomi is entitled to recover the fees it should not have been forced to incur.

The reason that counsel for Dareltech chose to maintain this unsustainable case apparently runs deeper than a mere desire to extract money using a frivolous lawsuit.  According to a recent complaint filed by a former Pierce Bainbridge partner against Pierce Bainbridge and several named partners (including David Hecht), these types of frivolous cases were critical to

the survival of Pierce Bainbridge.  (McCrum Decl. at Exhibit B.)  That complaint alleges that "litigation financing was critical to the very existence of Pierce Bainbridge.  Indeed, the very day before Plaintiff's banishment, emergency funds were received from [litigation funder] Pravati in order to meet the electronic payroll deadline and keep up false appearances."  (*Id*. at p. 68, ¶ 283.)  But in order to secure that funding, Pierce Bainbridge apparently needed to show it had a "high volume of cases."  (*Id*. at p. 29, ¶ 120.)  The complaint introduces a documented piece of correspondence from Pierce Bainbridge's managing partner stating, "it is absolutely clear … that volume of cases is just as important as merits."  *Id.*  And according to the complaint, other Pierce Bainbridge partners are on record expressing concerns that having to handle "dog cases that are not winnable, suck the life out of everyone and decrease morale."  (*Id.* at p. 30, ¶ 123.)  Pierce Bainbridge's apparent business model would help explain why Dareltech's counsel so doggedly pursued this litigation.

Awarding fees in this case would send a strong message to both Dareltech and its counsel that Pierce Bainbridge's penchant for ignoring the merits of the case and treating litigation like "combat" has no place in our judicial system.  *Octane Fitness*, 572 U.S. at 554 (suggesting courts may consider "the need in particular circumstances to advance considerations of compensation and deterrence" in awarding attorney fees).

### 4.    The Xiaomi Defendants Are Prevailing Parties.

The Xiaomi Defendants are prevailing parties.  A defendant has "fulfilled its primary objective whenever the plaintiff's challenge is rebuffed, irrespective of the precise reasons for the court's decision."  *CRST Van Expedited*, 136 S. Ct. at 1651 ("a defendant need not obtain a favorable judgment on the merits in order to be a 'prevailing party'").  Here, the Xiaomi Defendants defeated Dareltech's attempt to bring suit against them in New York and, thus, have fulfilled their primary objective of rebuffing the plaintiff's challenge.  *Id*.  This case is just like

*Megna v. Biocomp*, 225 F.Supp.3d at 224.  There, the court found that the case must be dismissed for lack of personal jurisdiction and that the plaintiff's conduct had been objectively unreasonable.  The plaintiff filed the case in New York, instead of Colorado where there defendants were located.  When the court gave the plaintiff thirty days to amend its complaint to address the deficiencies in the pleadings, the plaintiff instead moved to transfer the case, conceding that jurisdiction was lacking.  The court awarded fees, finding that "an order requiring Megna to pay attorney's fees after unreasonably extending the duration of the litigation, while aware that New York did not have jurisdiction over Grube, is compatible with these policies [for awarding attorney fees]." *Id.* at 225.  The same is true here.  Dareltech knew jurisdiction was lacking, but it pursued this case relentlessly.  Then, when faced with the inarguable truth that the case could not be maintained in New York, Dareltech moved to transfer the case to California as alternate relief.  (Dkt. No. 66 at 31-32.)  This Court dismissed the case and denied Dareltech's motion to transfer.  (Dkt. No. 80 at 20.)  Xiaomi is undoubtedly a prevailing party entitled to attorney fees.  *Megna*, 225 F.Supp.3d at 224-25; *see also Direct Fitness*, 281 F. Supp. 3d at 702; *Citi Trends*, 2018 WL 2276151, at *5.

**B.     Dareltech's Counsel Should Be Held Liable For Payment Of Xiaomi's Fees Under Section 1927 Because They Vexatiously And Unreasonably Multiplied These Proceedings.**

This Court can, and should, hold Dareltech's counsel jointly and severally liable for the payment of Xiaomi's attorney fees because counsel unreasonably and vexatiously multiplied these proceedings in bad faith.  28 U.S.C. § 1927; *Alyeska Pipeline*, 421 U.S. at 258-59.

*First*, as shown above, the claims brought by Dareltech's counsel were entirely without color.  *Wynder*, 565 F. App'x at 13.  The exercise of personal jurisdiction and venue over the Xiaomi Defendants was untenable.  Xiaomi's counsel made this clear from the beginning, providing sworn testimony and relevant authorities to support its position.  Dareltech's counsel

repeatedly ignored Xiaomi's compelling showing and instead pursued a campaign of harassment, public ridicule, and escalation of these proceedings.

Second, evidence of counsel's bad faith abounds.  Id.; see also Knopf, 2018 WL 1226023, at *5 (explaining bad faith is established by "finding that an 'attorney's actions were so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay'").  Here, counsel's behavior is so devoid of merit, the only possible conclusion is that he was acting in bad faith with the improper purpose of harassing Xiaomi.  Dareltech's counsel acted unprofessionally, both by interviewing workers at the Mi Fan Event without disclosure of counsel's identify or affiliation with this case (Dkt. Nos. 48 & 77), and by giving interviews to the media about this case (NY Ethical Rule 3.6).  Moreover, Dareltech's counsel never substantively addressed any of Xiaomi's letters, but plowed forward without regard to the facts or the law, even adding parties and threatening to add yet more parties.  (Dkt. Nos. 9 & 58-11.)  And, there is simply no excuse for counsel's statements to reporters and his social media posts, in all of which he voluntarily perpetuated the unfounded allegations.

Section 1927 therefore provides this Court with a separate, independent reason for assessing attorney fees based upon Dareltech's counsel's egregious and unprofessional behavior.

### C.    In All Events, This Court Has The Power Under Its Inherent Authority To Award Fees To Redress Dareltech's And Its Counsel's Misconduct.

This Court has the inherent authority to award attorney fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  Alyeska, 421 U.S. at 258-59.  "[A]n award made under the court's inherent power may be made against an attorney, a party, or both."  Enmon, 675 F.3d at 144 (affirming sanctions).  For all the reasons described herein, this Court may order Dareltech and/or its counsel to pay Xiaomi's attorney fees to make Xiaomi whole and

31

send a message of deterrence that this Court will not tolerate plaintiffs' use of the court system to

bring frivolous claims for the purpose of harassment to obtain nuisance settlements.  *Octane*

*Fitness*, 572 U.S. at 554-55.

## IV.   <u>CONCLUSION</u>

For all these reasons, the Xiaomi Defendants respectfully request that this Court order

Dareltech and/or its counsel to pay Xiaomi's attorney fees.

Dated:       August 6, 2019               JONES DAY
             New York, NY


                                          By: */s/ Ryan B. McCrum*
                                          John J. Normile
                                          250 Vesey Street
                                          New York, NY  10281-1047
                                          jjnormile@jonesday.com
                                          (212) 326-3939

                                          Ryan B. McCrum (*pro hac vice*)
                                          Susan M. Gerber (*pro hac vice*)
                                          North Point
                                          901 Lakeside Avenue
                                          Cleveland, OH  44114-1190
                                          rbmccrum@jonesday.com
                                          smgerber@jonesday.com
                                          (216) 586-3939

                                          *Attorneys for Defendants*
                                          *Xiaomi Inc., Xiaomi USA, Inc., and*
                                          *Xiaomi Technology, Inc.*